## R. D. LOPER ET AL. v. JAMES ROBINSON.

(Case No. 596.)

1. CONTRACT — DECLARATIONS.— A contracting party who makes representations concerning a fact intended to influence, and which do influence, the conduct of another with whom he is contracting, is responsible for injury resulting from them, if they should prove false, no matter how innocently made or honestly believed.

2. CHARGE OF COURT.— An erroneous instruction will not vitiate a judgment, unless shown to have produced actual or possible injury to appellant.

3. FACT CASE. — See case for facts, where a representation made by a contracting party, untrue in fact, on which was predicated a charge of the court not approved, was not sufficient to require a reversal of judgment.

APPEAL from Freestone.   Tried below before the Hon. John B. Rector.

Robinson sued Loper and McElroy upon a note for $1,203, upon which were indorsed two credits, amounting to $700.

Defendants answered, alleging that the note was given for a tract of land which plaintiff represented to contain 1,231 acres, when in fact it only contained 1,091 acres; that they purchased at the price of $3 per acre, and they claimed a proportional abatement for the number of acres short.

They also alleged that plaintiff·represented to them that there was a valuable cedar brake on the land, and that this was with them an important inducement in their purchase at that price; that they relied upon that representation, and gave the price they did, because of it; that in fàct there was no cedar brake upon it, and that it is not worth as much as they agreed to pay, or would have been willing to pay, by $500, had they known there was no cedar brake upon it.   Prayer for judgment in reconvention for $500.

They also claimed another payment on the note of $300.   The plaintiff replied that he surveyed the land himself, by agreement of parties, and that defendants were present and assisted, and carried the chain, and agreed to abide by that survey, and expressed themselves satisfied therewith.   That they saw the land, and could not be deceived in relation to the cedar brake, and denied making any representations to them about it.

The evidence showed that the defendants contracted for the land at $3 an acre, agreeing to have it surveyed, and take it at what it should appear to contain, at $3 an acre; that plaintiff surveyed the land, and made the calculations, showing there were 1,231 acres in the tract, the defendant McElroy being present and carrying the chain. That when the land was purchased, plaintiff represented

to defendants that there was a cedar brake on the land, and this was an important inducement with them to buy the land at that price, and they relied upon plaintiff's representations. They afterwards ascertained there was no cedar brake upon the land, except some scrubby cedar, and that the tract was not worth as much by $250 as it would have been had it been as plaintiff represented. The witness stated that he assisted in the survey, knew where the lines run, knew they did not include the cedar brake, and after the survey was made executed the promissory note sued on in this case, and made no complaint about the cedar brake.

The defendant Loper also testified to the same facts as his co-defendant. He admitted all that McElroy did as to the execution of the note, and received the deed for the land from plaintiff, knowing that the cedar brake was not included in the survey, and made no complaint about it, for fear plaintiff would demand payment of a note previously given for the land, and sue them.

In relation to the quantity of the land in the survey, the testimony was conflicting; one witness testifying that the tract contained but 1,095 acres; another testified that if the surveyor's calculations were incorrect, that by his plat the land contained 1,103 acres; that he had calculated the land by the field notes in the deed, and found it to contain near about 1,231 acres, and that the previous witness had not made his calculations by a correct mode. Robinson, who surveyed the land, said he found it to contain 1,231 acres. He says he did not represent there was a cedar brake on the land.

The judge charged the jury in respect to the additional payment claimed, and in respect to the deficiency of acres, and of his charge in these respects the defendants made no complaint.

In respect to the cedar brake, the charge of the court is: "If you find that the plaintiff willfully represented to

defendants that there was valuable cedar timber on the land sold them, and that such representations were totally or in part false, and formed a material inducement with defendants in purchasing the land, then plaintiff is liable to the defendants for the diminution in the value of the land, occasioned by the failure of the land to contain the cedar timber as represented by the defendants."

The jury found a verdict for the plaintiff for $481.95, of which plaintiff remitted $75.

The defendants moved for a new trial, which being overruled they appealed.

The errors assigned are:

1. The fifth instruction referred to above.

2. That the verdict is contrary to the law and evidence.

3. That the court erred in overruling the motion for new trial.

*Thos. G. Jones*, for appellants.

*W. B. Robinson*, for appellee.

QUINAN, COMMISSIONER.—The assignments of error which complain of the verdict, it will be seen from an examination of the testimony, are not well taken. As respects the quantity of land in the survey the testimony is conflicting, and it was for the jury to determine the issue from the facts before them. Upon this subject, we cannot say that there was no evidence to sustain the finding, and consequently their verdict cannot be disturbed.

The only objection made to the charge of the court is that it qualified the effect of the representations of plaintiff with respect to the cedar brake, by the use of the word "willfully," and made the right of the defendants to recover because of the falsity of them to depend upon the fact, not only that they were induced to buy the land by them, and that they were false, but that they must have been willfully made.

VOL. LIV—33

It is not very clear to us that this objection is sound. It is true that the representations by which a party may be induced to act, and upon which he does act, relying upon them, need not be fraudulently made, to entitle him to relief for any injury caused by them. If they are intended to influence him, and expected to have that effect, and really do influence his conduct, it is but just that the party making them shall be held responsible for their verity, if they should prove false, no matter how innocently made or honestly believed. Pendarvis *v.* Gray, 41 Tex., 329, is a case very much like the present in some of its features. It is there said, that the fact that the defendant innocently represented the land to be on a certain creek, leaves him liable for the legal consequences of his statements. They are the same as if they were made with the intention to deceive. But there the defendant had pointed out to plaintiff the land, telling him it was his, that it was every way suitable for his purposes, and the plaintiff bought solely relying upon those representations.

In Mitchell *v.* Zimmerman, 4 Tex., 80, Mr. Justice Wheeler says: "There was a gross and palpable misrepresentation intentionally practiced upon the defendant by the plaintiff in a most material point." "The representation was in a matter respecting which the defendant is not supposed to have been equally with the plaintiff acquainted with the facts, and it was made in a manner so positive and definite as naturally to induce the former to forbear using the means of information which for his own security he might otherwise have employed. And these are the circumstances which render the misrepresentations of a character to avoid the contract." The cases in our reports are generally those in which there was an intention to deceive, but still there are many others in which the rule is laid down, that it is not material whether the party misrepresenting the fact upon the belief of which another is

induced to act, knew it to be false, or believed it to be true; he is still responsible for the injury sustained by the party who relied upon it.   See Sayles' Treatise, 2d ed., and cases cited in § 84.

The charge in the present case would have been doubtless more consonant with the views expressed by our supreme court if the word willfully had been omitted. The word does not, however, mean "knowingly," or imply, as appellant contends, an intention to misrepresent. It has received judicial construction in the doctrine of estoppels.   In Freeman *v.* Cooke, 2 Exch., 663, Parke, B., says: "By this term willfully we must understand, if not that the party represents that to be true which he knows to be untrue, at least that he means his representation to be acted upon, and that it is acted upon accordingly."   2 Parsons on Cont., 793.   And if in this sense it had been used in the charge given, and could so have been understood only to have been used, not as requiring that Robinson's representations, in order that he should have been bound by them, should have been wrongfully or deceitfully made, but that, whether innocently made or not, they were made with a design to influence the conduct of the defendants, and did so influence them, as Robinson knew, we might hesitate to pronounce it erroneous. It would seem to be a harsh rule to visit the same consequences upon the utterances of honestly believed statements, not made with the intention that they shall be acted upon, and without expectation that they would be, as where false statements are made, though in ignorance of their falsity, but with the intention that they shall be acted upon and believed by others, who are thereby induced to do what they would not otherwise.

Conceding, however, that the charge is erroneous, it by no means follows that the error is sufficient to work a reversal of the judgment.

An erroneous instruction will not vitiate a judgment unless shown to have produced actual or possible injury to the appellant. Salinas *v.* Wright, 11 Tex., 572; Hollingsworth *v.* Holshousen, 17 Tex., 41. So in Carter *v.* Gaines, 44 Tex., 548, it was held that an erroneous charge, which manifestly from the record could have worked no injury, and did not affect the rights of the parties, was no ground for reversal.

Now, in the present case, the statement of facts discloses that it was proven by the oath of the defendants themselves, that at the time when they executed the note sued on, and when they received their deed to the land, they had definitely ascertained and well knew that there was no cedar brake upon the land they purchased. Whatever may have been their information when they first traded for the land, and whatever representations, true or false, may have been then made to them by Robinson to induce them to purchase, the fact is incontestible, that when they consummated their contract, before then incomplete, and surveyed the land, and executed their note for the purchase money, they had the fullest knowledge, from actual inspection, of the character of the property they were purchasing. It is beyond controversy that there was then no deceit practiced upon them, nor could there have been. If they were circumvented they were willing dupes. They shut their eyes and closed their lips, when they could have seen for themselves, and uttered no complaint when they could have spoken. Under such circumstances, they have no right to complain of the enforcement against them of their obligation knowingly, willfully and deliberately consummated. Thatcher *v.* Jones, 31 Maine, 528. "It is morally certain that they were not injured" by the erroneous instruction given by the judge upon the trial. The facts proved precluded them from any defense upon the ground of Robinson's

representations, true or false. So that it becomes wholly immaterial whether the instruction was right or wrong. In any event they are bound to pay the obligation.

There was consequently no error in refusing a new trial.

The proper disposition of this case is to affirm the judgment.

AFFIRMED.

[Opinion delivered March 18, 1881.]