UNITED STATES GYPSUM COMPANY v. P. T. SHIELDS.

No. 1822. Decided April 8, 1908.

**False Representations—Evidence.**

Evidence in support of an allegation that a sale of "adamant" plaster to one having a contract for constructing buildings at a government post was procured by false representations that the officer in charge would require that, instead of a cheaper article, in the work, considered and held not insufficient in law to sustain such claim. (Pp. 474–478.)

Error to the Court of Civil Appeals for the Fourth District. in an appeal from Bexar County.

The Gypsum Company sued Shields and appealed from a judgment for defendant, and on its affirmance obtained writ of error.

*Keller & Keller,* for plaintiff in error.—Representations must be made with knowledge of falsity.—Jackson v. Stockbridge, 29 Texas, 398; Livermore v. Middlesborough Town-Lands Co., 50 S. W., 9; Donoho v. Equit. Life Ass. Soc., 22 Texas Civ. App., 197.

If there is no fraud at time of making contract it is not rescindable. Donoho v. Equit. Life Ass. Soc., 22 Texas Civ. App., 197; Bigham v. Bigham, 57 Texas, 242; Livermore v. Middlesborough Town-Lands Co., 50 S. W. Rep., 9; Faires v. Cockerill, 29 S. W. Rep., 672.

Misrepresentations to avoid a contract, must be as to existing facts. Livermore v. Middlesborough Town-Lands Co., 50 S. W. Rep., 9; Speed v. Hollingsworth, 38 Pac. Rep., 498; Kempner v. Wallis, 2 Texas App. Civ., p. 517; Bigham v. Bigham, 57 Texas, 241; Little v. Allen, 56 Texas, 139; Detroit Electric Works v. Riverside St. Ry. Co., 29 S. W. Rep., 413; Landreth Co. v. Schevenel, 52 S. W. Rep., 148.

Purchaser with knowledge of conditions can not resist. Allen v. Thompson, 2 Texas Civ. App., 92-93; Hawkins v. Wells, 17 Texas Civ. App., 364; Little v. Allen, 56 Texas, 139.

Where parties have equal opportunity to judge, one who reposes in the opinion of others, does so at his peril. Jackson v. Stockbridge, 29 Texas, 398; Hopkins v. Woldert Gro. Co., 66 S. W. Rep., 63; Hawkins

v. Wells, 17 Texas Civ. App., 364; Warner v. Munsheimer, 2 W. & W., 345, sec. 394; Little v. Allen, 56 Texas, 139.

A contract can not be avoided because a party is influenced by mere expression of opinion found to be incorrect. Bowen v. Hatch, 34 S. W. Rep., 332; Foote v. Frost, 39 S. W. Rep., 329; Allen v. Thompson, 2 W. & W., p. 92, sec. 106; Little v. Allen, 56 Texas, 139; Wooters v. International & G. N. R. R. Co., 54 Texas, 300; Lynch v. Ortlieb, 70 Texas, 730; Jackson v. Stockbridge, 29 Texas, 398; Bigham v. Bigham, 57 Texas, 240; Livermore v. Middlesborough Town-Land Co., 50 S. W., 9-13; Hopkins v. Woldert Gro. Co., 66 S. W. Rep., 63; Hawkins v. Wells, 17 Texas Civ. App., 364.

*Ogden, Brooks & Napier,* for defendant in error.—In the statement by Captain Fleming, which is undisputed, and under the testimony of defendant Shields, the jury had a right to find that Watson made the said defendant Shields false representations as to material facts, and that the said Shields relied on such representations and was thereby induced to execute the contract sued on. Bishop on Contracts, sec. 171.

If Watson believed that "adamant" would be used on all the buildings and formed that belief from what the quartermaster had told him before he made the representation to Shields, and if Shields entered into the contract, relying on the facts so stated to him, and these statements were the inducing cause for his giving said orders, then clearly he is entitled to be relieved from it, no matter how innocent Watson may have been in making the representation, nor how fully he may have believed them to be true.

MR. JUSTICE BROWN delivered the opinion of the court.

The Gypsum Company sold to Shields 2796 barrels of adamant plaster upon an order signed by Shields and dated June 18, 1904. Shields at the time had a contract for plastering some government buildings at Fort Sam Houston, and there are a number of others who had contracts of like character at the same place. Shields refused to accept the adamant plaster from the Gypsum Company, which brought this suit to recover from him the sum of $1,345.70, profits that it claimed it would have realized on the sale.

Shields pleaded the general denial and especially that the order sued upon was procured by plaintiff from him by fraud in this: "That prior to, and at the time of, the giving of said order, and for the purpose of inducing this defendant to make the said order, one W. F. Watson, the agent and representative of the plaintiff, represented to this defendant that he had seen the Quartermaster in charge of the construction of the buildings then being erected by the United States Government at Fort Sam Houston, Texas, and had been informed by the said Quartermaster that the material set out in the said order and in plaintiff's petition would be used on all buildings then under contract to be constructed there." It was alleged in the answer, that, relying upon the representation of Watson, who was the agent of the Gypsum Company, the defendant executed the order for the cement which was calculated to be enough for all the contracts that Shields then had with the government. It is alleged that as a further induce-

ment to him to make the order, Watson represented that the Quartermaster in charge had decided to use the material on all buildings then in the course of construction and under contract to be constructed at Fort Sam Houston. That all contractors having such contracts at Fort Sam Houston would be compelled to use the adamant plaster, and that he, the said Shields, could sell enough plaster to the other contractors to make a considerable amount of money, and that the company would appoint him agent and allow him ten cents per barrel for all plaster that he might sell to other contractors. Watson then and there appointed Shields the agent of the company for the adamant plaster at that place. It is alleged that the representations of Watson were false and that none of the contractors were required to use the said adamant plaster in the construction of the buildings, and none did use it; that Shields was not able to sell any of it. He alleges that if he had known that the contractors would not be required to use the adamant plaster, he would not have signed the said order.

The Court of Civil Appeals filed the following ·conclusions of fact: "As an inducement for the defendant to enter into the contract sued upon, W. F. Watson, the agent and representative of plaintiff, represented .to him that he had seen the quartermaster in charge of constructing certain buildings for the United States at Ft. Sam Houston, and that he had been informed by the quartermaster that the material described in the contract would be used in all buildings then under contract of construction for the Government at that place; that relying on said representations and believing them to be true, the defendant made the order through said agent for said material, which was represented by Watson to be the amount necessary to be used in the buildings which defendant was then under contract with the Government to build at Fort Sam Houston; that the representations so made by plaintiff's agent were false, none of the contractors for the erection of · such building being required to use such material in their construction; that such representations were material, and fraudulently made and induced defendant to make said order, but for which it would not have been given; for the material was worthless to defendant in the absence of a requirement to use it in the buildings he was under contract to construct at Ft. Sam Houston."

Shields' evidence, given in his own behalf, shows, that he had a contract for plastering at Fort Sam Houston near the city of San Antonio; that he had seen Captain Fleming, the Quartermaster of the Post, and inquired of him as to the use of the adamant plaster in the work. That afterwards he saw Watson at the Menger Hotel and Watson proposed to make the contract with him. Shields told him that he had not gotten any satisfaction from the quartermaster about using the adamant plaster, therefore, would not make the contract, but Watson agreed to go and see the quartermaster and learn whether or not the adamant would be used in the work. He returned to the Menger and met Shields and reported to Shields that the quartermaster had stated to

him that the adamant plaster would be used in all of the work on the Hill; that is, at Fort Sam Houston. Shields asked Watson if he was positive and Watson said that he was satisfied it would be used, and that they had a "cinch" on it, and urged Shields to close the contract, which he did, with the understanding that the adamant would be used in all contracts at Fort Sam Houston, and Shields would not have signed the contract if he had not believed that all of the contractors for the work at the Fort would be required to use the adamant plaster. Shields did not testify that Watson told him that the quartermaster had said that he would require all the contractors on that work to use the adamant plaster. Captain Fleming testified that Shields had spoken to him once with reference to the adamant plaster and that subsequently Watson who represented the Gypsum Company came to see him and asked him with reference to the use of the adamant and Captain Fleming told him that the adamant plaster filled the specifications and that it was the only cement that did, and that it would be acceptable in the work at the Fort. Captain Fleming testified that he then understood and believed that the Acme cement would not be accepted because it did not fulfill the specifications for the work. He did not tell Watson that the other contractors would be required to use the adamant plaster. The quartermaster afterwards permitted the use of the Acme cement, but did not require that the Acme should be used. The adamant plaster might have been used, but it cost about one-third more than the Acme and neither Shields nor the other contractors used the adamant.

The trial court instructed the jury as follows: "You are instructed to find for plaintiff the full amount sued for, unless you find for defendant under instructions hereinafter given you.

"You are instructed, however, that if you find from the evidence that prior to and at the time defendant gave the written order in evidence before you for the 2,796 barrels of adamant, one W. F. Watson, agent for plaintiff, represented to this defendant that the quartermaster in charge of the construction of certain buildings that were to be erected by the United States Government at Fort Sam Houston would require the same character of material set out in said written order to be used on all buildings then under contract to be constructed there, and that the contractors who had contracts to build any of said buildings would be compelled to use said material, and, that by reason thereof and by virtue of his agency for said adamant this defendant would make ten cents per barrel on all adamant so sold by defendant to the other contractors who were to erect any of said buildings, and, you further find that such representations, if any, were untrue, and that such representations, if any, were material inducements to defendant to execute said order and defendant relied upon said representations, if any, in making said order, then you will find for defendant."

The jury returned a verdict in favor of the defendant and must have found that Watson represented to Shields that all contractors

who had contracts for plastering on Government buildings at Fort Sam Houston would be compelled to use adamant plaster. The plaintiff in error asserts that there is no evidence upon which the jury could find that verdict. This presents the only question necessary for us to consider in this case.

In Austin v. Talk (26 Texas, 130), Judge Wheeler said: "Upon a question of positive fraud, the court will be very slow to disturb the verdict of a jury where the evidence discloses suspicious circumstances of a character to induce the belief that any artifice, concealment or misrepresentation, has been practiced, or that confidence reposed has been abused to the prejudice of the party complaining."

It appears from the undisputed evidence that Shields and a number of other persons had contracts for plastering Government buildings at Fort Sam Houston. Watson, who was the agent of the plaintiff in error, went to San Antonio for the purpose of selling the plaster to Shields. Both of them knew that the plaster would be accepted by the officers of the Government. The jury had a right to conclude that when Watson went to see the quartermaster at the suggestion of Shields, it was not to ascertain whether the plaster would be accepted in Shields' work, because that had already been settled, but that, the inquiry to be made was upon the important question whether it would be exclusively used in all the work done under existing contracts at that place, for upon its exclusive use depended the profits to be made by sale to other contractors, because, as agent of the company, he would be in a position to command the market for that plaster at Fort Sam Houston. Shields would naturally seek information on that point. When Watson returned and reported to Shields that, "they are going to put it on and now is the time you could enter into a contract with me," suggesting that Shields would then become the agent of the company and be in a position to sell plaster to all the other contractors, and Shields made the further inquiry in this language: "Well, I says, are you positive, because I could not get any decided answer from the Captain and quartermaster." It might be reasonably inferred from the answer, "I am satisfied about that," that he meant to say, he was satisfied that the other contractors would be required to use the adamant plaster. It would not be a reasonable supposition that Shields would pay one-third more for adamant plaster than other material would have cost him unless some inducement to enter into this contract was offered to him, and nothing appears which could have operated to produce that effect except that the use of the adamant plaster would be exclusive upon that work and give him a monopoly of the sale of it for the work to be done. We are of the opinion that taking the most favorable view of the facts to sustain the verdict of the jury, they might have drawn from the facts and circumstances the conclusions indicated, and, having so concluded, the verdict was proper. We are not able to see that the facts in this case are of such a nature that reasonable minds might not differ as to the conclusions to be drawn, therefore, the question

is one of fact and is not within the jurisdiction of this court. It is therefore ordered that the judgments of the District Court and Court of Civil Appeals be affirmed.

*Affirmed.*