### JONES et al. v. BANKERS' TRUST CO.

#### (District Court, D. New Mexico. April 15, 1916.)

#### No. 442.

1. CORPORATIONS ⬤➞80(2)—AGENTS—MISREPRESENTATIONS.

Unless there is some binding agreement that a corporation will not be responsible for fraudulent misrepresentation of its agents made in selling corporate stock, the corporation, regardless of secret limitations of its agents' power, is liable for their misrepresentations; for it can act only through its agents, and, by accepting the fruits of the agency, is precluded from denying the agents' authority.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 246, 247; Dec. Dig. ⬤➞80(2).]

2. CORPORATIONS ⬤➞80(1)—STOCK SUBSCRIPTIONS—CONTRACTS.

A provision, in a contract of subscription to the stock of a corporation, that no statement or representation by the agent taking the subscription should in any way operate to cancel or annul the contract unless reduced to writing and incorporated in the contract, is valid and binding, and, in a suit to annul the subscription on account of fraudulent representations is a good defense, the representation not being included in the contract.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 244; Dec. Dig. ⬤➞80(1).]

In Equity. Suit by L. R. Jones and others against the Bankers' Trust Company, a corporation. On motion to strike a portion of defendant's answer. Motion denied.

Powell & Noblett, of Silver City, N. M., for plaintiffs.

Barnes & Nicholas, of Socorro, N. M., Towne Young and Etheridge, McCormick & Bromberg, all of Dallas, Tex., and James Royall, of Silver City, N. M., for defendant.

POPE, District Judge. This is a suit to annul a subscription for stock in the defendant corporation on the ground of fraudulent representations by its agents in procuring the stock. The defendant's answer sets up in defense the agreement to purchase signed by the subscriber:

---

⬤➞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

No. 1095

Amount $23,000.00

This is to certify that I hereby purchase 2,000 shares of the capital stock of the Bankers' Trust Company, for which I agree to pay twenty-three thousand and no/100 dollars.

I further agree that no statement, representation or agreement of warranty made to me by the person taking this contract shall in any way operate to cancel or annul this contract unless the same be reduced to writing and filled in on the following line:

---

A copy of the certificate of said stock is shown on the back hereof, and forms and constitutes a part of this contract as fully as if incorporated in the body hereof.

The further consideration is that I will extend to Bankers' Trust Company the option to purchase above described stock should my stock be for sale.

Dated this 12th day of May, A. D. 1914.

Address Lordsburg, N. M.                        [Signed]   R. L. Jones.
                                                           J. T. Jones.

Witnessed by ———, Salesman.

The question here presented is whether the second paragraph contained in the instrument just quoted constitutes a good defense as against any representations, fraudulent or otherwise, made by the agent and not inserted in the contract. In other words, is the subscriber precluded from annulment of his contract by a provision thereof to the effect that no representation made by the agent shall accomplish an annulment unless such representation be inserted in the contract?

[1] It is clear that, independent of this provision, fraudulent representations by the agent selling the stock would avail against the company whatever the secret limitations of power existing between the company and its agent might be. 1 Cook on Corporations (7th Ed.) § 141; 2 Pomeroy's Eq. Jurisprudence, § 909; Garrison v. Technic Works, 55 N. J. Eq. 708, 37 Atl. 741, 744; Southern Ins. Co. v. Milligan, 154 Ky. 216, 157 S. W. 37.

The foregoing is true because the corporation can act only through its agents, and the acts of the agents in and about its business are the acts of the principal. Likewise the company is bound by such representations, because these are within the apparent scope of the authority of the agent selling, and because the company by accepting the fruits of the agency will not be heard to deny the authority of the agents in the use of means to secure such fruits.

[2] The case thus far proceeds upon well-known principles of law, which, indeed, are not questioned by the company. The precise point here is whether a provision precluding for purposes of annulment any representations except as embodied in the contract constitutes such a limitation on the power of the agent as, being known to the subscriber, relieves the company for any fraudulent representations of such agent not so embodied. Attorneys for the subscriber urge that such a provision is in effect to place the subscriber in a bag and to sew him up therein. On the other hand, for the company it is said that such a provision is a perfectly proper means by which a company may be informed as to what their agents have represented, and may thus give

the company the option of rejecting an offer of purchase based upon such misrepresentation, thus dealing with the matter at the start instead of later. It is said for the company that such a provision constitutes a limitation upon the power of the agent, known to the subscriber as well as to the company, and thus binding upon all.

Many of the authorities cited by the subscriber on this point do not in my judgment reach it. Thus, Southern Ins. Co. v. Milligan, 154 Ky. 216, 157 S. W. 37, was a case where, it is true, the contract provided that "no conditions or agreements other than those printed or written herein shall be binding on the company." But outside of the mere mention of this in the statement of facts the case does not refer to the matter at all. The provision was not urged as a defense against the claim of misrepresentation, and the court does not refer to, or rule upon, its efficacy to that end.

Gypsum Co. v. Shields, 106 S. W. 734, a case in one of the Texas Courts of Civil Appeals, and thus not in a court of last resort, dealt with a contract containing the following:

"It is agreed that this written order and printed terms hereon constitute the entire contract, * * * and there are no verbal statements or agreements varying the terms."

It was held in that case that evidence of fraudulent representations by which the purchaser was induced to sign the writing, and not tending to vary the terms thereof, was admissible in defense. This is manifestly not authority, since it dealt with a situation entirely unlike the present one. The contract dealt with in the Shields Case was practically an embodiment of the principle that all antecedent oral agreements are merged into the written instrument, and cannot be received to vary the terms thereof. The representations sought to be proved in that case did not vary the terms, but were simply inducements to sign. They were thus not excluded by the terms of the contract. The Shields Case went to the Supreme Court of Texas (101 Tex. 473, 108 S. W. 1165); but that court affirmed the decision purely upon the question of fact as to whether the proof of fraud was sufficient to sustain the verdict, and without in the slightest degree considering the question here involved. That the Supreme Court did not rule upon this in the Shields Case is expressly recognized in Commonwealth Co. v. Bomar (Tex. Civ. App.) 169 S. W. 1060, 1063, a case much relied on by the subscriber, and to be now considered.

Commonwealth Co. v. Bomar, just cited, was likewise a decision by the Court of Civil Appeals. In that case the contract contained the following stipulation:

"No conditions, representations or agreements other than those printed herein, shall be binding on the Commonwealth Organization Company or the Commonwealth Bonding & Casualty Insurance Company."

The bonding company contended that because of this provision evidence as to representations by the company's agent was not admissible. The Court of Civil Appeals held, however, against this view, basing its decision upon the Shields Case, supra, which, as we have seen, is not at all in point.

In Commonwealth Co. v. Cator, 175 S. W. 1074, 1077, a decision also by the Court of Civil Appeals of Texas, the point here made was involved, and the court dismissed it with the following comment:

"Though the subscription contract stipulates that no conditions, representations, or agreements, other than those printed therein, shall be binding, still evidence of the alleged representations by McDonald was admissible to show fraud in the inception of the contract. The effect of this evidence was not to vary or contradict the terms of the written instrument. United States Gypsum Co. v. Shields (Tex. Civ. App.) 106 S. W. 724; Id., 101 Tex. 473, 108 S. W. 1165."

The cases cited, however, in the foregoing quotation, are, as we have seen, not authoritative. Further, the assignment made in the Cator Case to the effect that the evidence tended to vary or contradict the terms of the written instrument was, as the court held, clearly untenable, since the representations did not contradict the terms of the instrument, but simply constituted inducements to its execution. The question raised here as to the binding effect of the contract against representations not embodied therein was not raised in the Cator Case, and that case is therefore not authority here.

The same Court of Civil Appeals considered this question in Commonwealth Co. v. Barrington, 180 S. W. 936, 938, where it is said:

"It is urged that the representations made before the contract in question was executed were inadmissible because it varied the terms of the contract. The contract has a clause: 'No conditions, representations or agreements other than those printed herein shall be binding * * * on the Commonwealth Bonding & Accident Insurance Company.'

"It is insisted by appellant that appellee should not have been permitted to prove any other agreement or promise than those contained in the contract itself for the reason that the recitals in the contract that there were 'no conditions, representations or agreements other than these' contained therein. We were first inclined to believe the proposition presented by appellant to be sound, but under the authority of U. S. Gypsum Co. v. Shields (Tex. Civ. App.) 106 S. W. 725, and affirmed by the Supreme Court, 101 Tex. 473, 108 S. W. 1165, in which a like provision was contained in an order, in which it was held such provision did not preclude proof of fraudulent representations inducing the contract, and that such proof did not vary the terms of the contract. This case induces us to conclude otherwise. We might note, however, that the grounds set up to avoid the contract in that case were facts outside the contract and did not purport to be part of the promise or agreement, but were only representations that certain contractors would use the material being sold in the construction of government buildings; and it further appears that the cement ordered by the dealer was for the purpose of sale, and in that particular that case is distinguishable from this."

It will be noted from the foregoing quotation that this decision results only from a mistaken view of the Shields Case as authority, and that, had the proposition been an original one in the Barrington Case, the decision of the court would have been otherwise.

Two New York cases are likewise in point for the subscriber. Thus in Smith v. Hildenbrand, 15 Misc. Rep. 129, 36 N. Y. Supp. 485, it was held by a court of common pleas that such a provision as the present one does not relieve the principal from liability for the fraudulent representations of the agent. This case does not seem to have been taken to the higher court.

In Universal Fashion Co. v. Skinner, 64 Hun, 293, 19 N. Y. Supp. 62, there was a similar ruling by the Supreme Court of New York, Judge O'Brien, who wrote the opinion for the court, dissented.

No other authorities are cited for the subscribers, so that their case rests upon decisions not entirely harmonious, and from intermediate courts of Texas and New York.

The cases cited for the company are more numerous and much more to the point. Thus in Colonial Corporation v. Bragdon, 219 Mass. 170, 106 N. E. 633, the contract contained the following clause:

"No agent of this company has authority * * * to make any reference, representation or agreement not contained in this contract, and none not contained herein shall be binding upon the seller, or in any wise affect the validity of this contract or form any part thereof, but all statements made have been merged and set forth herein."

The court said:

"The contract was executed in duplicate, and each party retained an original. The defendant testified that he 'read over the contract before he signed it and knew of its terms and conditions.' He was allowed to introduce evidence tending to show, and the jury found, that he was induced to sign the contract by reason of false material representations knowingly made by authorized agents of the plaintiff to the effect that the lots were part of a tract cut up and laid out in streets; that there were several substantial buildings upon other parts of the tract; the land was in every way ready and suitable for immediate building and occupancy; and that the lots were within 20 minutes' walk from the railroad station.

"The question is whether these facts and findings constitute a defense to an action on this contract. The representations plainly were fraudulent in their nature and, apart from the paragraph of the contract quoted at length, would invalidate any agreement made in reliance upon them. But the parties chose, after all the preliminary statements and negotiations were ended, to put the contract in writing. It is not contended that the defendant was induced to sign that contract through any misrepresentation as to its contents or meaning. On the contrary, his own evidence was that before signing he read it through and understood its terms. One of those terms, to which he himself assented, was that no agent of the plaintiff had any authority to make any representations not contained in the contract. Further stipulations, to which he likewise assented, were, in substance, that every representation to which he would undertake to hold the seller was written in the contract and every statement upon which he relied was set out in it. He intentionally and intelligently, without any trick, mistake, duress, covin, or fraud as to its contents, signed this written contract, which was plain in its phraseology. In the light of the evidence and findings of the jury, it was a most unwise agreement for him to make. But he made it freely, when he knew what he was about. It is a fundamental principle of law that contracts in writing voluntarily executed with full knowledge of their contents by rational beings acting on their own judgment must be enforced.

"The defendant relies on the proposition that fraud vitiates every contract; but there is a distinction between a fraud which is antecedent to a contract, and fraud which enters into the making of the contract. The present case belongs to the former class. It constitutes no defense to this contract. Nor does it afford ground for an independent action. Cannon v. Burrell, 193 Mass. 534, 79 N. E. 780; McCoy v. Metropolitan Life Ins. Co., 133 Mass. 82.

"This seems a hard case. But contracts freely made by intelligent persons cannot be abrogated simply because they are unwise."

International Co. v. Martin, 221 Mass. 1, 108 N. E. 469, from the same court, and decided only in 1915, is to the same effect.

An earlier case, Cannon v. Burrell, 193 Mass. 534, 79 N. E. 780, decided by the same court, presents the matter with a like conclusion, but upon a different course of reasoning:

"By agreeing that 'separate and verbal or written agreement with salesmen are not binding upon' the plaintiffs, and that the sale was 'made under inducements and representations herein expressed and no others,' the defendant agreed with the plaintiffs that in making the contract he would deal with the plaintiffs' salesman on that basis and no other; that is to say, on the basis that the salesman had no authority to change the terms of the written contract by any 'inducements,' 'representations,' or 'separate or written agreements.' Such an agreement is binding."

In Equitable Co. v. Biggers, 121 Ga. 381, 49 S. E. 271, the Supreme Court of Georgia had under consideration a contract very similar to the present one. The court said:

"We think it clear, in view of the explicit stipulations of the contract of sale, and the entire absence of any averment in the plea that the defendant was misled or deceived as to the contents of the contract, or in any manner prevented from ascertaining the same, he was estopped from setting up as a defense that he was induced to execute the contract by reasons of the fraudulent representations of the plaintiff's agent as to the quality of the goods purchased and guaranty of profits for room in the store. 'This sale is made under inducements and representations herein expressed, and no others,' is the plain and unambiguous language of the contract. The right to claim failure of consideration was expressly waived unless the defendant should exhaust the terms of warranty and exchange as specified in the contract, and there was not even an intimation in the plea that defendant had complied, or made any effort to comply, with such terms. The plea merely sought to set up that certain representations (presumably oral) made by plaintiff's agent to defendant, contemporaneously with the execution of the contract, and which induced defendant to enter into the same, were false and fraudulent, and this, too, in the face of the explicit agreement on the part of the defendant that the contract was made under the inducements and representations expressed therein, and no others. The plea was, for the reasons given, if for no others, without merit, and the court erred in refusing to strike it."

In Arthur E. Guth Piano Co. v. Adams, 114 Me. 390, 96 Atl. 722, decided in 1916, the Supreme Court of Maine said, in dealing with a contention similar to that here made:

"The plaintiff contends that the evidence was inadmissible, because it tended to vary, add to, and modify the written agreement. It is unnecessary to consider the question thus raised, for upon the contract is a certificate, signed by the defendant, 'that the Arthur E. Guth Piano Company are not to be holden to me for any agreements made with their salesmen other than those specified within this lease.' This certificate was an agreement that the written lease contained all the agreements, terms, and conditions of the contract. It was notice to the defendant that selling agents had no authority to vary, add to, or modify the terms of the lease as written. If, notwithstanding this, the defendant relied upon representations of the agent, outside the written instrument, he did so at his peril. The agent may be liable for his false representation, but the principal is not made liable for them. The evidence was properly excluded."

In McKindly v. Dunham, 55 Wis. 515, 13 N. W. 485, 42 Am. Rep. 740, the Supreme Court of Wisconsin had occasion to deal with a contract containing the words "agent not authorized to collect." The court said:

"To this extent (i. e., of taking orders) they authorized him and trusted him; but they might not have been willing to trust him further with a large and dangerous power of receiving payments."

The following cases likewise uphold such an agreement as is here pleaded as constituting a defense to the claim of misrepresentation: Bruner v. Kansas Co., 7 Ind. T. 506, 104 S. W. 817; Advance Thresher Co. v. Roger, 123 La. 1067, 49 South. 709; Anderson Electric Co. v. Cleburne Co. (Tex. Civ. App.) 44 S. W. 929; National Trust Co. v. Thomas, 28 Tex. Civ. App. 379, 67 S. W. 454; Bybee v. Embree Co. (Tex. Civ. App.) 135 S. W. 203.

While Insurance Co. v. Mowry, 96 U. S. 544, 24 L. Ed. 674, was decided upon different principles, yet in that case the court mentions as germane to the decision a provision in the policy to the effect:

"That no agent of the company, except the president, and secretary, could waive such forfeiture, or alter that or any other condition of the policy."

The weight of the authority is thus to the effect that such conditions, when embodied in a contract such as this, are binding upon the subscriber. The cases proceed upon the ground, first, that the absent principal, the company, is entitled to protect itself against the improper acts of its representatives by requiring any acts relied upon against such representatives to be narrated in the contract. This provision is not unreasonable, for it protects the company upon the one hand, and, being known to the subscriber on the other, puts the latter upon notice of the limitations of the authority of the agent. The cases further proceed upon the ground that such an agreement fairly made by a subscriber is as binding upon him as any other provision of the contract. Having read it and understood it, the time for him to speak is then, and not afterwards. As was said in Colonial Corporation v. Bragdon, supra, "contracts freely made by intelligent persons cannot be abrogated simply because they are unwise."

I am of the opinion that the answer, so far as it pleads this contract, states a defense against the bill. The motion to strike must, accordingly, be denied.