**PASSERO v. LOEW et ux.**

No. 4934.

Court of Civil Appeals of Texas.
El Paso.

April 29, 1953.

Rehearing Denied June 3, 1953.

Isaacks & Ward and Ellis O. Mayfield, El Paso, for appellant.

Potash, Cameron, Potash & Bernat, El Paso, for appellees.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of El Paso County, 41st Judicial District. Samuel Loew and his wife, as plaintiffs, recovered a judgment against A. S. Passero in the sum of $2,450. Defendant Passero has perfected an appeal therefrom. Trial was to the court with a jury, submission on special issues. Plaintiff sought relief on the ground of al-

leged fraudulent representation inducing plaintiffs to purchase a lot with a house in the course of construction thereon in the city of El Paso, or in the suburbs thereof. The false representation alleged and found in plaintiffs' favor was that the house located at 5113 Alamogordo Street in the City of El Paso was well constructed, and that plaintiff would have no serious problems with the construction of said house. There were other allegations in plaintiffs' petition aside from allegations from which it could be inferred that the above representation was a fraudulent representation. Plaintiffs' petition we think sufficiently alleged that the above representation was untrue, that same was material, believed and relied upon by plaintiffs, and that plaintiffs had been damaged thereby. What is denominated as the third count alleged that before the closing of the transaction whereby plaintiffs bought the house, the defendant through his agent agreed as part of the consideration of the contract to guarantee the premises (that is, the house) which he was purchasing, against cracking for a period of five years. The pleading in this respect is not deemed material here but will be discussed later in the opinion.

Defendant answered by general denial, alleged that on or about January 15, 1951, defendant entered into an earnest money receipt and contract of sale with plaintiffs, defendant agreeing to convey the real estate involved for a total sum of $9,950; thereafter defendant informed plaintiffs that the house was located on clay and informed the plaintiffs that an independent contractor known as Structural Stabilization Corporation was attempting to stabilize the condition of the soil, and further informed the plaintiffs as to the process used by said contractor, and that on the completion of the work by the contractor that said contractor would guarantee for a period of five years the stabilization of the soil beneath the structure; denied that plaintiff relied on any representations made by defendant or his agent, but on the contrary, after making a full and independent investigation of the matter with full knowledge of all conditions relating to the prop-

erty, completed the purchase of the house. Defendant thereafter filed a special exception to plaintiff's petition, attacking the allegations in count three wherein plaintiff stated that the guarantor is not made a party by the reason of the claimed guarantor's insolvency.

The jury in response to special issues found in substance that the defendant represented to plaintiff that the house located at 5113 Alamogordo Street, El Paso, Texas, was well constructed, and that plaintiffs would have no serious problems with the construction of said house; found that such representation was false; that plaintiffs believed such representation, relied upon same in purchasing the house; that such representation was a material representation; that $7,500 represented the fair market value of the house and lot on which it stands at the time of the trial; further found that the plaintiff knew on February 9, 1951, at the time of the completion of 'the purchase, that the house was built on a clay subsoil; that prior to February 9, 1951, defendants or others informed the plaintiffs of the condition of the soil beneath the house; found that defendant or his agent agreed with plaintiffs that defendant would guarantee the building against cracking for a period of five years; that such agreement was a material inducement to plaintiffs in the purchase of the property; that plaintiffs did not accept the written guarantee of Structural Stabilization Corporation in lieu of the promised guarantee of defendant; that plaintiffs received the guarantee of Structural Stabilization Corporation prior to February 9; that plaintiff was not told that the guarantee against the house cracking would be furnished by the Structural Stabilization Corporation; found that plaintiffs tendered back the house and lot within a reasonable time after they discovered the house was built on a clay subsoil.

Appellant urges twenty-four points of error. It is not deemed necessary to discuss each point urged separately, but what is said we think will dispose of all points.

The first point urges fundamental error, claiming that plaintiffs' petition

failed to allege certain essential elements of a cause of action based upon fraudulent representation. The point of error fails to point out in what respect plaintiffs' petition failed to allege certain essential elements of a cause of action based on fraudulent representation. Defendant's statement is somewhat more specific. Defendant did not assail plaintiffs' petition by special exception in any respect, but as to the allegation that the guarantor was not joined because of its insolvency. It is thought that this special exception should have been sustained, but we cannot conceive of how defendant was harmed by the court's failure to sustain such special exception. We hold that in the absence of special exception that plaintiffs' pleading was sufficient to present the issue of fraudulent representation.

■ It is urged that there was no testimony in the record sustaining the jury's finding to questions No. 1 through 5, inclusive, in that the undisputed evidence shows that neither the defendant nor his agent at any time prior to February 9, 1951, represented to plaintiffs that plaintiffs would have no problems with the construction of the house. Before issue No. 1 was submitted to the jury defendant objected thereto as follows:

"For the reason that there is no evidence to support the submission of such issue, and for the further reason that an affirmative answer to such issue and the succeeding issues tied to question No. 1 would not support a judgment under the facts of this case, further for the reason that there is no evidence in the case that the plaintiff ever tendered back to defendant the property involved at no time from the date of the purchase until the close of testimony."

The matter in special issue No. 1 as to which it is claimed there was no evidence was coupled with the phrase "was well constructed". It is very clear that the objection to special issue No. 1 did not specifically call the court's attention to the claim that the evidence failed to show that defendant's agent represented or said to plaintiffs that plaintiffs would have no serious problems with the construction of said home. It is thought that defendant's objection was insufficient to call the court's attention to the claimed defect in special issue No. 1. Plaintiff Loew, relating to the time before the consummation of the purchase of the house, testified as follows:

"Yes, sir, he told me that the house was perfectly sound, had recently been built, in fact was still in the process of being completed, and that the construction was so sound that Tony would guarantee the house against cracking for five years (Tony being the builder) and he stressed that point again and again—the fact that it was guaranteed by the builder. That more than anything else influenced me in buying the house."

In connection with this testimony it appears that by Tony was meant the defendant Passero. The substance of an issue is all that it is necessary to submit or prove. It is not necessary that an issue be in the exact words of the pleading. Texas Steel Co. v. Rockholt, 142 S.W.2d 842, (w. r. w. m.) and authorities there cited. The variance was immaterial. Blue Diamond Co. v. Verhalen Nursery Co., 125 Texas 165, 81 S.W.2d 1001. If the construction was sound plaintiff would have no cause to complain. Passero, on the eve of closing the transaction, himself represented to plaintiff that a crack that appeared was just an ordinary settling crack. This conduct was in the nature of a continuing representation that the house was well constructed. It is further urged that the part of the representation that the construction was sound was not shown to be untrue. The reasoning seems to be that where a dwelling house is constructed on a foundation that is so unstable by reason of the condition of the soil that the building cracked, the building still may be well constructed.

■ It is thought that a house intended for a residence is a structure intended for permanent human occupation. In determining the quality of its construction, all its constituent parts must be considered—

for instance, if the roof is lacking or defective, the construction is not sound. There is evidence that in a comparatively short time the roof of this building cracked, and other parts thereof cracked. It is thought that if a house is constructed on an unstable foundation that causes same to crack and become in a measure unfit and unsuitable for a residence, that it cannot be said that the construction is sound or the house well constructed. If the house was sound construction there would be no reasonable ground for complaint therefor. The representation relates to an existing fact as to the condition of the house, and is not promissory or relating to the future. It was persisted in and reaffirmed up to the time of the execution of the deed.

The defendant must have considered that it was his duty to stabilize the soil under the house. After the signing of the earnest money receipt he expended, or testified that he expended, the sum of seven hundred and fifty dollars.

Appellant's third point of error is that the court committed error in overruling defendant's objection to the submission of question No. 1 and the companion questions No. 2 through 5, to effect that there was no evidence, that there was no representation made that the plaintiff would have no serious problems with the construction of the house, and that there was no evidence in this case to such a representation, and the undisputed evidence was that the house was well constructed. Defendant urged no such objection to the court's charge.

It is urged that the answer of the jury to special issues Nos. 7 and 9 precludes the entry of a judgment in favor of plaintiffs. In response to special issues 7 and 9 the jury found in substance that plaintiffs knew on February 9th that the house was built on a clayey subsoil; that prior to February 9 defendants or others informed plaintiffs of the condition of the soil beneath the house. There is no evidence that it was not possible to so construct the house on such character of soil so as to prevent same from cracking. The evidence is not conclusive that proper steps

could not be taken to render its construction on such soil sound. The representation charged was not that the soil under the house was firm or stable, but that the house was well constructed.

The above contention presents, in our opinion, the most serious question in this appeal. Plaintiff's trial petition contained three counts. The first count sought relief on the ground of fraudulent representation. If the judgment should have been in favor of plaintiffs the basis must be found in the finding in the verdict on the issues relating to this count. In the third paragraph of the first count it is charged that defendant represented that the house on the premises sold was well constructed, and plaintiff would have no serious problems with the construction of said house. In the fourth paragraph of the first count it is alleged that plaintiffs believed such representations, with no knowledge that the construction was of an inferior quality; that shortly after plaintiffs accepted possession and moved into said house the exterior and interior of said house began to crack seriously and has continued to crack and slowly disintegrate. In the seventh paragraph it is alleged that the cracking and deterioration of the house is caused by soil conditions on which said building was placed, which did not permit of the building of a house such as was built thereon by the defendant and sold to plaintiffs; that the condition of said soil being slippery permitted the building to settle and crack, and all of said conditions were known to defendant but not known to plaintiffs at the time the sale was completed, and that defendant did not advise plaintiffs of said soil conditions and that if plaintiffs had known of such soil conditions they would not have purchased the said property.

It is thought that the allegations of the seventh paragraph particularize the rather general allegations as to representation that the house was well constructed. A fair construction of the charge that the house was not well constructed as represented by the defendant's agent is that the foundation was unstable because of the condition of the soil. The specific allegation is:

"That the condition of said soil being slippery permitted the building to settle and crack and all of said conditions were known to defendant but not known to plaintiffs at the time the sale was completed, and that defendant did not advise plaintiffs of said soil condition, and that if plaintiffs had known of such soil conditions they would not have purchased the property."

No. 7, which was answered in the affirmative, established that on February 9, the time of the closing of the sale, the plaintiffs knew that the house was built on clay subsoil. Plaintiffs' allegation was that the damage to the house was caused by soil conditions on which said building was placed; that the condition of said soil being slippery permitted the building to settle and crack; that all of said conditions were known to defendant but unknown to plaintiffs. It might well be that one knowing of the condition of the soil upon which the foundation of a house was placed might not know of the effect that the clayey or slippery condition of the soil would have on the house. Neither the pleading nor the evidence presents this theory. The only evidence of any defective construction of the house was that it was constructed on such a foundation that it cracked. From the undisputed evidence, for some time prior to the closing of the sale of the premises in controversy plaintiffs knew that there was a question of the stabilizing of the house, knew that defendant had employed another contractor to remedy this condition. The house had cracked to an extent, to the knowledge of plaintiffs before they closed the deal on February 9, 1951.

Plaintiff received a so-called guaranty before closing the sale, from the contractor seeking to stabilize the house, that the house would not crack for five years. In the third count, in regard to this guaranty plaintiff pled that defendant through his agent, agreed as part of the consideration of the contract to guarantee the premises which plaintiff was purchasing, against cracking for a period of five years, and to carry out this contract defendant furnished a guaranty in writing and the guarantor is not made a party hereto because it is insolvent at this time. The evidence abundantly supports the finding of the jury as to issues 7 and 9. However, this house was in the course of construction at the time the earnest money receipt was signed by plaintiffs and defendant. Before the closing of the sale on February 9th plaintiff testified that when he talked with defendant about a crack that had appeared in the house he was assured by defendant that the crack was normal, could and would be remedied. This in a manner corroborated the representation of the agent Rucker that the house was well constructed. It was in the nature of a continuing representation. There is no evidence that a house can not be well constructed on a clay subsoil. Defendant evidently thought so. He employed another contractor to remedy the unstable condition of the soil under the house. Before the sale was consummated this had presumptively been done. This contractor executed the so-called guaranty to plaintiffs that the house would not crack for five years. Now it is elementary that in a fraud case that in order to recover, plaintiff must believe the representations; they must have been material, and must have been relied on by the plaintiff.

The taking of a guaranty somewhat weakens plaintiffs' testimony that they relied upon the representations that the house was well constructed. However, this is not conclusive on the matter. The so-called guaranty in no way protected plaintiffs. A perusal thereof discloses its intrinsic invalidity insofar as plaintiffs are concerned. Naive indeed must plaintiffs have been if they relied on this guaranty or rather warranty, as protecting them in any way. The insolvency of the purported guarantor was immaterial except it may have some slight evidentiary bearing.

Plaintiff had a friend, an engineer, consult with the defendants. This again is merely evidentiary on the issue of reliance.

There was introduced in evidence by the defendant a rather anomalous instrument

which is denominated a guaranty. Plaintiff never accepted this guaranty. It seems to be entirely void on its face. Defendant signed same as owner. In one place it is recited that plaintiff was the owner, then sets forth an agreement never made by and between plaintiff and the contractor relative to performing certain work, the purpose of which was to stabilize the house. As a matter of law it created no legal rights in favor of plaintiff. It is an anomalous affair for a corporation authorized to do a construction business to enter into the guaranty business. A warranty to defendant would not inure to the benefit of the plaintiff. This contract, insofar as plaintiff was concerned, amounted to nothing. It was entirely void. It might well be taken to evidence an intent on the part of defendant through a sham contract to induce plaintiff to rely on the representations that had been made to him that the house was well constructed.

 It is asserted that there is no evidence, or insufficient evidence, to warrant a finding by the court or jury that defendant knew of the falsity of his representations. It is thought that the fact that plaintiff had notice before closing the transaction, of the clayey condition existing under the house negatived the materiality of the representations and the reliance of plaintiff thereon, that the fact of the so-called guaranty negatived the reliance of plaintiff on the representations. These matters are deemed evidentiary in nature. As a matter of law they do not establish or destroy a finding on an ultimate issue. As has been said before, a short time before the closing of the deal on February 9, 1951, defendant when shown a crack by plaintiffs told plaintiffs that that was an ordinary settling crack, and in substance assured him that the situation was not serious. It is urged that defendant did not know of the falsity of this representation. It is thought that the evidence is sufficient to raise an issue that he did know. If this be incorrect, if he made the representation it is thought that his knowledge of the truth or falsity of same would not make the representation any less actionable.

Wilson v. Jones, Tex.Com.App., 45 S.W. 2d 572. The matter is set at rest in regard to the sale of real estate. Art. 4004, V.A.C.S., provides in regard to actionable fraud:

"Actionable fraud in this State with regard to transactions in real estate or in stock in corporations or joint stock companies shall consist of either a false representation of a past or existing material fact, or false promise to do some act in the future which is made as a material inducement to another party to enter into a contract and but for which promise said party would not have entered into said contract. * * *"

Bad faith is not made an element. Prideaux v. Roark, Tex.Comm.App., 291 S.W. 868. In the course of the opinion in Wilson v. Jones, supra, [45 S.W.2d 575], which was specifically approved by the Supreme Court, Judge Sharp says:

"In this state the rule is well established that ordinarily bad faith or fraudulent interest [intent] is not essential to actionable fraud. Watson v. Baker, 71 Tex. 739, 9 S.W. 867; Loper v. Robinson, 54 Tex. 510; Russell v. Industrial Transportation Co., 113 Tex. 441, 251 S.W. 1034, 258 S.W. 462. The rule is further well established in this state that, where affirmative representations of fact are made and designed to be acted upon by another and he does so believing them to be true when they are false, one making the representations is liable, regardless of his knowledge of falsity or intent to deceive. * * * U. S. Gypsum Co. v. Shields, 101 Tex. 473, 108 S.W. 1165; Wortman v. Young, (Tex.Civ.App.,) 221 S.W. 660."

It is not believed that under the pleadings the judgment can be based upon this representation, but that it does evidence a continuation of the representation of the agent, goes to explain the representation of the agent, it to an extent upholds the language used in issue No. 1, and explains to an extent the use of the language of the clause in the issue "and that the plaintiff

would have no serious problems in the construction of said house." It is believed that a case of actionable fraud was found by the jury in favor of plaintiff and the evidence was sufficient to sustain the finding of the jury; that false representation was made as found; that same was material and that plaintiff suffered damage. The following authorities are deemed to support the judgment. Donigan v. Polacek, Tex.Civ.App., 85 S.W.2d 771; Reed v. Hester, Tex.Com.App., 44 S.W.2d 1107. The contention is not urged here that defendant's agent Rucker was unauthorized to make the representation relied upon. Defendant testified he directed the agent to inform plaintiff of the fact that the soil under the house was unstable. He did not testify that he withheld authority to testify as to the effect thereof. The assurance that the house was well constructed, coupled with the statement that the soil was unstable was in substance that the house could be and was well constructed on clay soil. In any event, defendant refusing to rescind is bound by the agent's representations.

The foregoing, it is thought, disposes of all material errors urged by defendant in this appeal. However, all have been given careful consideration, and those not specifically discussed herein are overruled.

It is ordered that the judgment of the trial court be in all things affirmed.

McGILL, Justice (dissenting).

I am unable to agree with the majority opinion and disposition of this case. The sole allegation in plaintiff's pleading on which the opinion and judgment is based is found in the third paragraph of plaintiff's second amended original petition, which is:

"That said home was built by the Defendant upon plans and specifications prepared by the Defendant and was sold by an agent for the Defendant and upon representations during the sale that said house was well constructed and that Plaintiffs would have no serious problems with the construction of said home."

Whether this allegation is sufficient to charge that the representation included the statement that the house was well constructed so that it would not crack, even though built on a clayey subsoil, I seriously doubt. However, the evidence is all to the effect that the house was well constructed, apart from the fact that it was constructed on a clayey subsoil, and unless this fact can be considered as a part of the construction there was no misrepresentation. However, plaintiffs alleged in the 7th paragraph of their second amended original petition that "if plaintiffs had known of such soil conditions they would not have purchased the property." The jury found in answer to special issue No. 7 that plaintiffs did know on February 9, 1951, at the time of the purchase of the property, that the house was built on a clay subsoil, and also in answer to special issue No. 9 that defendant or others informed the plaintiffs of the condition of the soil beneath the house prior to February 9, 1951. As conceded by the opinion, the evidence was ample to support this finding. Therefore, it seems to me that by their own admission in their pleading, plaintiffs refute any fact finding that they relied on any representation of defendant as to the condition of the subsoil, and that the house was well built, or built so that it would not crack even though built on a clay subsoil. This is the only representation which is a basis for recovery, and in my opinion it is insufficient.

The opinion seems to give a great deal of weight to the fact that defendant represented to plaintiffs that a crack that had appeared in the house was an ordinary settling crack which he, defendant, would repair. Apart from the fact that there is no pleading that this was a false representation, or that plaintiffs relied thereon, there is nothing in the record to show that this representation was false. The particular crack to which defendant referred may have been an ordinary settling crack, so far as the evidence discloses. Certainly we are not justified in assuming that this was a false representation.

I respectfully dissent.