Jim L. DANIEL et ux., Appellants,

v.

Harry H. PORTER, Jr., et al., Appellees.

No. 7531.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 18, 1965.

Rehearing Denied Nov. 15, 1965.

Walton S. Morrison, Big Spring, for appellants.

Nelson, McCleskey & Harriger, Lubbock, for appellees.

CHAPMAN, Justice.

This is a venue case. The suit was filed in Lubbock County by appellees, Harry Porter, Jr., and Bass Elliott, against Jim L. Daniel and wife, Zyla Daniel of Reagan County, Bob Sudderth of Lubbock County and Lawyers' Title Insurance Corporation, a foreign corporation with an agent in Lubbock County, Texas.

Appellees seek to rescind the purchase from the Daniels of the surface only of 5½ sections of land in Reagan County and/or damages for misrepresentations made by Mr. Sudderth as agent of Mr. Daniel alleged to constitute fraud under Article 4004, Vernon's Ann.Tex.Civ.St., and/or common-law fraud. Mr. Sudderth acted as the real estate agent for the Daniels. Lawyers' Title Insurance Corporation furnished the title policy in connection with the transaction. Appellees did not seek counsel in the transaction, apparently relying upon the title insurance.

Judgment overruling the plea of privilege of Mr. Daniel to move the case to Reagan County was overruled, from which this appeal is perfected.

Particularly material hereto, and we believe decisive, is the contention by appellees that Mr. Sudderth in Lubbock County specifically represented that Mr. Daniel owned all rights to the underground water except such small amount as was reserved in the oil and gas lease and easements outstanding on the property subject to being used for mixing mud and other minor uses incident to drilling for oil and gas, but not for water flooding.

We must thus determine from the record evidence if the necessary elements of fraud were established in order to maintain venue in Lubbock County; i. e., (1) a false misrepresentation made by defendant in Lubbock County through his agent, Sudderth; (2) the reliance thereon by appellees; (3) the purchase in reliance thereon; and (4) damages to appellees resulting from such representations. Trinity Universal Ins. Co. v. Soliz, Tex.Civ.App., 241 S.W.2d 625 (N.W.H.); Mahaley v. Jenkins, Tex.Civ. App., 369 S.W.2d 846, 850 (N.W.H.). It is not necessary to prove a specific amount of damages. Cockburn v. Dixon, 152 Tex. 572, 261 S.W.2d 689.

The record shows that appellees assured the real estate agent, Mr. Sudderth, they were going to eventually subdivide the property and sell it in smaller units for irrigation farms and that it was important that they know if all the water went with the sale of the surface and that each time they asked Mr. Sudderth about the water, he assured them they would own it. Even Mr. Sudderth's testimony shows that he specifically asked Mr. Daniel whether the land was included in a water flood unit and Mr. Daniel assured him it was not.

"Q. All right. You knew, then, that where a water flooding operation existed, or a water flood unit existed that sometimes the oil companies pumped water from beneath the ground and put it into another hole in the ground and reinjected it down into the oil producing formation for the purpose of secondary recovery of oil?

A. That's the way I understood water flood, yes, sir.

Q. Now, because of that prior knowledge of that did you make any investigation down there as to whether or not this five and a half sections or any part of it was under a water flood unit?

A. I never made any investigation— you mean prior to the contract?

Q. Prior to the contract or before it was fully consummated and carried out?

A. Yes, sir, I asked Mr. Daniel, I said, 'Now, is this in the water flood?' and he said 'No, they cannot use water out from under my land."

This statement appears from the record to be incorrect because Mr. Daniel had previously signed ratifications of both the Merchant and Spraberry-Aldwell water flood unit agreements covering 4½ sections of the land involved. Additionally, the record shows Mr. Daniel knew that an oil company had drilled a well on the subject land with the intention of using fresh water therefrom for water flooding. The record also shows in effect that Mr. Sudderth assured the appellees there could be only minor use of the fresh water by the oil and gas lessees, which would result in their taking an immaterial amount of fresh water.

The unitization agreements, including a major portion of the land involved, gave the unit operator authority to inject fresh water from the land in any amount desired for water flooding purposes into all the land involved in the unit.

Appellees testified they would not have purchased the land if the existence of the unit agreements had been known to them.

A hydrologist testified that the water under the particular land, even with its unfit mineral content could have been sold to outside parties for resale to oil companies for water flooding and that the value of the land would be reduced by the existence of the unit agreements.

Our court has held that under Subdivision 7 of Article 1995, V.T.C.S., one of the several exceptions claimed herein to exclusive venue in the county of residence of appellant Daniel, that the pleader of the exception only has to establish a prima facie case of fraud perpetrated in the county in which venue is claimed under the exception. Brown Company v. Terrell, Tex.Civ.App., 310 S.W.2d 757 (N.W.H.).

Subdivision 7 of Article 1995, V.T.C.S., provides that: "In all cases of fraud * * suit may be brought in the county where the fraud was committed or where the defalcation occurred * * *." Our Supreme Court has held that subdivision applies to fraud under Article 4004, V.T.C.S. Cockburn v. Dixon, supra. Both common law and statutory fraud were pleaded.

Our courts have also held that regardless of the knowledge on the part of the person making the false representation of the truth or falsity thereof, such lack of knowledge * * * "[did] not make the representation any less actionable." Passero v. Loew, Tex.Civ.App., 259 S.W.2d 909 (N.R.E.); Wilson v. Jones, Tex.Com.App., 45 S.W. 2d 572, 575. In the last named case the Commission of Appeals said:

"The rule is further well established in this state that, where affirmative representations of fact are made and designed to be acted upon by another and he does so believing them to be true when they are false, one making the representations is liable, regardless of his knowledge of falsity or intent to deceive. Loper v. Robinson, supra [54 Tex. 510]; United States Gypsum Co. v. Shields, 101 Tex. 473, 108 S.W. 1165; Wortman v. Young (Tex.Civ. App.) 221 S.W. 660."

No findings of fact were filed and none were requested, so it is the duty of this court to affirm the judgment of the trial court if such can be sustained upon any reasonable theory supported by the evidence and authorized by law. Connor v. City of University Park, Tex.Civ.App., 142 S.W.2d 706, 708, syl. 1, (writ refused).

Numerous other exceptions to exclusive venue were pleaded and urged by brief. We believe the one we have discussed is decisive

of the case and that it would only extend this opinion to discuss the others.

Accordingly, we hold the evidence is sufficient to establish all the elements of fraud above named.

The judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING

Since the truthfulness of our statements concerning the record are challenged by appellants' motion for rehearing, we feel compelled to point out the specific page numbers in the statement of facts supporting the statements in our opinion. We have been challenged concerning our statements in our opinion to the effect that Mr. Sudderth assured the purchasers of the land that they would get all the water with the land except such small amount as was reserved for minor uses incident to drilling for oil and gas, but not for water flooding.

At Page 40 of the statement of facts Mr. Elliott was being questioned as to the representations Mr. Sudderth made concerning the water. The record shows:

"Q. All right. And what did he tell you in response to that?

A. He told me that we would have the rights to the water, that the water would be ours on that land.

Q. Just tell us whether or not you made inquiry as to whether or not you were in this purchase going to get all of the water?

A. I did.

Q. And what did he say in response to that?

A. I was told that we would get all of the water."

On Page 42 of the statement of facts Mr. Elliott stated he would not have been willing for the contract to be entered into without such assurances.

On Page 66 of the statement of facts Mr. Elliott testified that such representations were made before the contract was entered into. Other statements to the same effect may be found on Page 67 and by the witness Porter on Page 99 of the statement of facts.

Additionally, there is evidence sufficient to support the elements of fraud in the representations made in Lubbock County as to the quality of the water for irrigation purposes. Mr. Porter testified that the agent, Mr. Sudderth, qualified himself as an expert on land in the general area of that purchased and that * * * "he stated to me that there was water under all that land and that it was suitable for the purposes we had in mind, which was irrigation." Statement of Facts, Page 200.

■ The evidence is sufficient to justify the implied finding by the court that those statements were false, that appellees relied on them, that the purchase was made in reliance upon them, and that they were damaged thereby.

The consulting hydrologist, Mr. Ed L. Reed, testified that the water samples taken from some of the land involved would not be useful over any period of time in the growing of crops.

Contrary to the assertions made in the motion for rehearing, we nowhere in our opinion relied on statements by Mr. Daniel made in a county other than Lubbock for any legal conclusion we have made in our opinion but mentioned them only to show that there was some basis for the fraudulent representations made by Mr. Sudderth, his agent, in Lubbock County, whether knowingly made or not.

Accordingly, the motion for rehearing is overruled.