Emmett P. MILLER et al., Appellants,

v.

R. B. LATHAM, Jr., Appellee.

No. 6383.

Court of Civil Appeals of Texas.

Amarillo.

March 8, 1954.

Rehearing Denied April 19, 1954.

See, also, Tex.Civ.App., 250 S.W.2d 302.

Cowsert & Bybee, Hereford, Coleman Gay, Austin, for appellants.

Robinson & Robinson, Amarillo, for appellee.

NORTHCUTT, Justice.

On or about October 20, 1951, Emmett P. Miller, Harry S. Miller, Robert L. Miller, and Ann W. Miller Crockett, hereinafter referred to as plaintiffs and being the owners of the land hereinafter mentioned, acting through Ann W. Miller Crockett made and entered into a certain written lease with R. B. Latham, Jr., hereinafter referred to as defendant, whereby the plaintiffs leased the south one-half of Section 9, Block K–3, A. B. & M. Survey in Deaf Smith County, Texas, to the defendant for an annual rental of $2,500. The spouses of each of the plaintiffs joined them in this suit but will not be referred to herein any further since the above mentioned property was the separate property of the plaintiffs.

This is an action for cancellation and annulment of the above mentioned lease. As grounds for the cancellation and annulment of said lease, the plaintiffs pleaded as follows:

"The representations and statement of facts so made by the Defendant, Latham, for the purpose and intent of inducing these Plaintiffs to enter into said lease contract were and are as follows:

"A. That the proposed rental of $2500.00 which Defendant, Latham, offered to pay under such lease contract was in excess of the rental which the Plaintiffs would receive for said land for the year, 1951.

"B. That the proposed rental of $2500.00 per year was in excess of the rental which Plaintiffs could reasonably expect to receive in future years from the Defendant, Holman, if she were permitted to remain on said land.

"C. That the Defendant, Holman, was not interested in leasing said land in the future and that she was farm-

ing it as an accommodation to the Plaintiffs.

"D. That unless Plaintiffs drilled an irrigation well or wells upon said land, or induced a tenant to do so for them, said land would be farmed only as dry farming land.

"E. That the customary, usual and reasonable rental value of said land as irrigated land was not in excess of $2500.00 per year, considered as irrigated land."

The defendant filed his answer denying that he ever told the plaintiffs any of the matters alleged by them. The defendant in his answer also filed his counter-claim alleging he was damaged because of the plaintiffs' refusal to let him have the land in question under the terms of the lease.

This case was tried to a jury upon special issues. The issues and jury answers thereto are as follows:

"Special Issue Number One"

"A. Do you find, from a preponderance of the evidence, that on or about October 10, 1951 the defendant, R. B. Latham, Jr., represented to the plaintiff, Ann W. Miller Crockett, that $2500.00 rental per year for the land in controversy was in excess of the rental which the plaintiffs would receive for said land for the year 1951?

"Answer 'Yes' or 'No'.

"Answer Yes.

"If you have answered Special Issue Number One A. 'Yes', then answer Special Issue B. If you have answered Special Issue Number One A. 'No', then you need not answer Special Issue B.

"B. Do you find, from a preponderance of the evidence, that said representation, if any was made, was made by the defendant, R. B. Latham, Jr., to the plaintiff, Ann W. Miller Crockett, as a material inducement to plaintiffs to sign the lease in controversy?

"Answer 'Yes' or 'No'.

"Answer Yes.

"If you have answered Special Issue Number One B. 'Yes', then answer Special Issue C. If you have answered Special Issue Number One B. 'No', then you need not answer Special Issue C.

"C. Do you find, from a preponderance of the evidence, that said representation, if any was made, was made by the defendant, R. B. Latham, Jr., as a statement of fact?

"Answer 'Yes' or 'No'.

"Answer Yes.

"If you have answered Special Issue One C. 'Yes', then answer Special Issue D. If you have answered Special Issue One C. 'No', then you need not answer Special Issue D.

"D. Do you find, from a preponderance of the evidence, that said representation, if any was made, was false?

"Answer 'Yes' or 'No'.

"Answer No.

"If you have answered Special Issue One D. 'Yes', then answer Special Issue E. If you have answered Special Issue One D. 'No', then you need not answer Special Issue E.

"E. Do you find, from a preponderance of the evidence, that plaintiffs relied on said representation, if any was made?

"Answer 'Yes' or 'No'.

"Answer ———.

"If you have answered Special Issue E. 'Yes', then answer Special Issue F. If you have answered Special Issue E. 'No', then you need not answer Special Issue F.

"F. Do you find, from a preponderance of the evidence, that plaintiffs would not have signed the lease in con-

troversy had said representation, if any, not been made?

"Answer 'They would not' or 'They would'.

"Answer ———."

"Special Issue Number Two"

"A. Do you find, from a preponderance of the evidence, that on or about October 10, 1951 the defendant, R. B. Latham, Jr., represented to the plaintiff, Ann W. Miller Crockett, that $2500.00 per year rental for the land in controversy was in excess of the rental which plaintiffs could reasonably expect to receive in future years from the defendant, Holman, if she were permitted to remain on said land?

"Answer 'Yes' or 'No'.

"Answer Yes.

"If you have answered Special Issue Number Two A. 'Yes', then answer Special Issue B. If you have answered Special Issue Two A., 'No'., then you need not answer Special Issue Two B.

"B. Do you find, from a preponderance of the evidence, that said representation, if any was made, was made by R. B. Latham Jr., to the plaintiff, Ann W. Miller Crockett, as a material inducement to plaintiffs to sign the lease in controversy?

"Answer 'Yes' or 'No'.

"Answer Yes.

"If you have answered Special Issue Two B. 'Yes', then answer Special Issue C. If you have answered Special Issue Two B. 'No', then you need not answer Special Issue C.

"C. Do you find, from a preponderance of the evidence, that said representation, if any was made, was made by R. B. Latham Jr. as a statement of fact?

"Answer 'Yes' or 'No'.

"Answer Yes.

"If you have answered Special Issue Number Two C. 'Yes', then answer Special Issue D. If you have answered Special Issue Two C. 'No', then you need not answer Special Issue D.

"D. Do you find, from a preponderance of the evidence, that said representation, if any was made, was false?

"Answer 'Yes' or 'No'.

"Answer No.

"If you have answered Special Issue Two D. 'Yes', then answer Special Issue E. If you have answered Special Issue D. 'No', then you need not answer Special Issue E.

"E. Do you find, from a preponderance of the evidence, that plaintiffs relied on said representation, if any was made?

"Answer 'Yes' or 'No'.

"Answer ———.

"If you have answered Special Issue Two E. 'Yes', then answer Special Issue F. If you have answered Special Issue E. 'No', then you need not answer Special Issue F.

"F. Do you find, from a preponderance of the evidence, that plaintiffs would not have signed the lease in controversy had said representation, if any, not been made?

"Answer 'They would not' or 'They would'.

"Answer ———."

"Special Issue Number Three"

"A. Do you find, from a preponderance of the evidence, that on or about October 10, 1951 R. B. Latham Jr. represented to the plaintiff, Ann W. Miller Crockett, that the defendant, Holman, was not interested in leasing the land in controversy in the future?

"Answer 'Yes' or 'No'.

"Answer Yes.

"If you have answered Special Issue Three A. 'Yes', then answer Special Issue B. If you have answered Special Issue Three A. 'No', then you need not answer Special Issue B.

"B. Do you find, from a preponderance of the evidence, that said representation, if any was made, was made by R. B. Latham Jr. to the plaintiff, Ann W. Miller Crockett, as a material inducement to plaintiffs to sign the lease in controversy?

"Answer 'Yes' or 'No'.

"Answer Yes.

"If you have answered Special Issue Three B. 'Yes', then answer Special Issue C. If you have answered Special Issue Three B. 'No', then you need not answer Special Issue C.

"C. Do you find, from a preponderance of the evidence, that said representation, if any was made, was made by R. B. Latham Jr. as a statement of facts?

"Answer 'Yes' or 'No'.

"Answer Yes.

"If you have answered Special Issue Three C. 'Yes', then answer Special Issue D. If you have answered Special Issue Three C. 'No', then you need not answer Special Issue D.

"D. Do you find, from a preponderance of the evidence, that said representation, if any was made, was false?

"Answer 'Yes' or 'No'.

"Answer No.

"If you have answered Special Issue Three D. 'Yes', then answer Special Issue E. If you have answered Special Issue Three D. 'No', then you need not answer Special Issue E.

"E. Do you find, from a preponderance of the evidence, that plaintiffs relied on said representation, if any was made?

"Answer 'Yes' or 'No'.

"Answer ———.

"If you have answered Special Issue Three E. 'Yes', then answer Special Issue F. If you have answered Special Issue Three E. 'No', then you need not answer Special Issue F.

"F. Do you find, from a preponderance of the evidence, that the plaintiffs would not have signed the lease in controversy had said representation, if any, not been made?

"Answer 'They would not' or 'They would'.

"Answer ———."

"Special Issue Number Four"

"A. Do you find, from a preponderance of the evidence, that on or about October 10, 1951 R. B. Latham Jr. represented to the plaintiff, Ann W. Miller Crockett, that unless plaintiffs drilled an irrigation well or wells upon the land in controversy or induced a tenant to do so for them, said land would be farmed only as dry farming land?

"Answer 'Yes' or 'No'.

"Answer Yes.

"If you have answered Special Issue Four A. 'Yes', then answer Special Issue B. If you have answered Special Issue Four A. 'No', then you need not answer Special Issue B.

"B. Do you find, from a preponderance of the evidence, that said representation, if any was made, was made by R. B. Latham Jr. to the plaintiff, Ann W. Miller Crockett, as a material inducement to plaintiffs to sign the lease in controversy?

"Answer 'Yes' or 'No'.

"Answer Yes.

"If you have answered Special Issue Four B. 'Yes', then answer Special Issue C. If you have answered Special

Issue Four B. 'No', then you need not answer Special Issue C.

"C. Do you find, from a preponderance of the evidence, that said representation, if any was made, was made by R. B. Latham Jr., as a statement of facts?

"Answer 'Yes' or 'No'.

"Answer Yes.

"If you have answered Special Issue Four C. 'Yes', then answer Special Issue D. If you have answered Special Issue Four C. 'No', then you need not answer Special Issue D.

"D. Do you find, from a preponderance of the evidence, that said representation, if any was made, was false?

"Answer 'Yes' or 'No'.

"Answer No.

"If you have answered Special Issue Four D. 'Yes', then answer Special Issue E. If you have answered Special Issue Four D. 'No', then you need not answer Special Issue E.

"E. Do you find, from a preponderance of the evidence, that plaintiffs relied on said representation, if any was made?

"Answer 'Yes' or 'No'.

"Answer ———.

"If you have answered Special Issue Four E. 'Yes', then answer Special Issue F. If you have answered Special Issue Four E. 'No', then you need not answer Special Issue F.

"F. Do you find, from a preponderance of the evidence, that plaintiffs would not have signed the lease in controversy had said representation, if any, not been made?

"Answer 'They would not' or 'They would'.

"Answer ———."

"Special Issue Number Five"

"A. Do you find, from a preponderance of the evidence, that on or about October 10, 1951 R. B. Latham Jr. represented to the plaintiff, Ann W. Miller Crockett, that the customary, usual and reasonable rental value of the land in controversy as irrigated land was not in excess of $2500.00 per year?

"Answer 'Yes' or 'No'.

"Answer No.

"If you have answered Special Issue Five A. 'Yes', then answer Special Issue B. If you have answered Special Issue Five A. 'No', then you need not answer Special Issue B.

"B. Do you find, from a preponderance of the evidence, that said representation, if any was made, was made by R. B. Latham Jr. to the plaintiff, Ann W. Miller Crockett, as a material inducement to plaintiffs to sign the lease in controversy?

"Answer 'Yes' or 'No'.

"Answer ———.

"If you have answered Special Issue Five B. 'Yes', then answer Special Issue C. If you have answered Special Issue Five B. 'No', then you need not answer Special Issue C.

"C. Do you find, from a preponderance of the evidence, that said representation, if any was made, was made by R. B. Latham Jr. as a statement of facts?

"Answer 'Yes' or 'No'.

"Answer ———.

"If you have answered Special Issue Five C. 'Yes', then answer Special Issue D. If you have answered Special Issue Five C. 'No', then you need not answer Special Issue D.

"D. Do you find, from a preponderance of the evidence, that said representation, if any was made, was false?

"Answer 'Yes' or 'No'.

"Answer ———.

"If you have answered Special Issue Five D. 'Yes', then answer Special Issue E. If you have answered Special Issue Five D. 'No', then you need not answer Special Issue E.

"E. Do you find, from a preponderance of the evidence, that plaintiffs relied on said representation, if any was made?

"Answer 'Yes' or 'No'.

"Answer ———.

"If you have answered Special Issue Five E. 'Yes', then answer Special Issue F. If you have answered Special Issue Five E. 'No', then you need not answer Special Issue F.

"F. Do you find, from a preponderance of the evidence, that plaintiffs would not have signed the lease in controversy had said representation, if any, not been made?

"Answer 'They would not' or 'They would'.

"Answer ———."

"Special Issue Number Six"

"Do you find, from a preponderance of the evidence, that on or about October 10, 1951 it was agreed between the plaintiff, Ann W. Miller Crockett, and R. B. Latham Jr. that if it was not agreeable with the defendant Holman to deliver possession of the land in controversy then the lease in controversy would not be binding?

"Answer 'Yes' or 'No'.

"Answer No."

"Special Issue Number Seven"

"What amount of money, if any, per acre, do you find from a preponderance of the evidence, R. B. Latham Jr., could reasonably have made as net profits by farming the land in contro-

versy during the years 1952, 1953, 1954, and 1955 under the terms of the lease in controversy?

"Answer in Dollars and Cents for each year.

"Answer: 1952 $7000. 1953 $6000. 1954 $5000. 1955 $4000."

"Special Issue Number Eight"

"What amount of money, if any, per acre, do you find from a preponderance of the evidence, R. B. Latham Jr. could reasonably have made as net profits by farming the land in controversy during the years 1956 to 1967 under the terms of the lease in controversy?

"Answer in Dollars and Cents, for the entire period of time.

"Answer Cannot be determined."

"Special Issue Number Nine"

"What amount of money, if any, per acre, do you find from a preponderance of the evidence, R. B. Latham Jr. could reasonably have made as net profits by farming the land in controversy from October 10, 1951 to the date of this trial under the terms of the lease in controversy?

"Answer in Dollars and Cents.

"Answer $25.00 net per A."

"Special Issue Number Ten"

"What amount do you find as exemplary damages if any, for the defendant, R. B. Latham Jr., against the plaintiffs?

"Answer in Dollars and Cents.

"Answer $5000."

Both parties, at the close of the evidence and before the reading of the court's charge to the jury, made and presented their motion for an instructed verdict but the same were overruled by the court. The plaintiffs made their motion requesting the court to disregard certain findings of the

jury and to grant them judgment on the remaining findings of the jury but the same was denied by the court. The plaintiffs then requested the court to make findings of fact on each and all of the questions concerning Special Issues Nos. 1–E, 1–F, 2–E, 2–F, 3–E, 3–F, 4–E, and 4–F, being in answer to such sub-divisions of Special Issues Nos. 1 to 8, both inclusive. In response to such requests the court made and delivered the following findings:

"Special Issue No. 1–E:     Yes
Special Issue No. 1–F:     They would not
Special Issue No. 2–E:     Yes
Special Issue No. 2–F:     They would not
Special Issue No. 3–E:     Yes
Special Issue No. 3–F:     They would not
Special Issue No. 4–E:     Yes
Special Issue No. 4–F:     They would not

"s/   Harry H. Schultz
District Judge Presiding
Deaf Smith County, Texas"

Upon the verdict of the jury the court granted judgment for the defendant for damages as against the plaintiffs, Emmett P. Miller, Harry S. Miller, and Robert L. Miller, jointly and severally, for the sum of $17,161.51 together with 6 per cent interest and all costs of suit. Plaintiffs, Emmett P. Miller, Harry S. Miller, and Robert L. Miller, made their motion for a new trial which was by the court overruled and hence this appeal.

In the original judgment the court granted the defendant judgment as against all of the plaintiffs for $23,385.54 actual damages and $5,000 as exemplary damages. In the plaintiffs' motion for a new trial, among other exceptions, they excepted to the judgment as against the plaintiffs, Grace S. Miller, Thelma Miller, and Anna B. Miller, because such parties were not liable under the law; as to Ann W. Miller Crockett because she did not acknowledge the lease in question. They further pointed out that defendant was not entitled to his damages and also the sum of $1,385.54 as the balance of rents for 1951 and that they were entitled to a credit for $2,783 being the amount admitted by the defendant he collected on the 1951 rents. Plain-

tiffs also excepted to the judgment as to the $5,000 exemplary damages. The court sustained the above exceptions in said motion for a new trial but overruled all other parts of the motion and entered a reformed judgment granting defendant the sum of $17,161.50 as damages against the plaintiffs, Emmett P. Miller, Robert L. Miller, and Harry S. Miller. Mrs. Holman is not referred to herein because she is in no way involved in this appeal.

Appellants present their first four points of error together and contend that the trial court should have granted judgment for them upon the findings of the jury in answer to Special Issues Nos. 1–A, 1–B, 1–C, 2–A, 2–B, 2–C, 3–A, 3–B, 3–C, 4–A, 4–B, and 4–C. The jury in answering these Special Issues Nos. 1–A, 2–A, 3–A, and 4–A found that the defendant represented to the plaintiff, Ann W. Miller Crockett, that $2,500 rental per year for the land in controversy was in excess of the rental which the plaintiffs would receive for said land for the year 1951; that $2,500 per year rental for the land was in excess of the rentals which plaintiffs could reasonably expect to receive in future years from Holman if she were permitted to remain on the land; that Holman was not interested in leasing the land in the future, and that unless plaintiffs drilled an irrigation well or wells upon the land in controversy or induced a tenant to do so for them, said land would be farmed only as dry farm land. Then by Special Issues B of each of the four issues above referred to, the jury found all of these representations were made by the defendant as a material inducement to plaintiffs to sign the lease in controversy. By Special Issues C of each of these issues, the jury found all of the representations were made by the defendant as a statement of facts. Although the jury had answered that the defendant had made the above statements as a statement of facts and as a material inducement to plaintiffs' executing the lease contract, yet the jury held in answering Special Issues D of each of the above mentioned special issues that none of the statements were false.

■ The record has been examined on the issue of falsity of the statements made by the appellee. The undisputed evidence is that the rent for 1951 was over $4,000; that defendant knew Holman wanted to continue to farm the land in question, and that the land in controversy was being irrigated from a well on Holman's land and would not have to be farmed as dry land farming if retained by Holman. Be that as it may, even an innocent misrepresentation of a material fact made by a party for the purpose of inducing another party to enter into a lease will justify the voidance of the lease. The main issues are whether the representations were made and whether they were relied upon by Ann W. Miller · Crockett and whether they induced plaintiffs, acting through Ann W. Miller Crockett, to make and enter into the lease agreement. The trial court ruled that the pleadings and the evidence submitted were sufficient to warrant its findings that the plaintiffs relied upon all of the above statements and that the plaintiffs would not have signed the lease in controversy had said representations not been made.

■ In the case of Wilson v. Jones, 45 S.W.2d 572, 575, by the Commission of Appeals, it is stated:

"The rule is further well established in this state that, where affirmative representations of fact are made and designed to be acted upon by another and he does so believing them to be true when they are false, one making the representations is liable, regardless of his knowledge of falsity or intent to deceive. Loper v. Robinson, supra [54 Tex. 510]; United States Gypsum Co. v. Shields, 101 Tex. 473, 108 S.W. 1165; Wortman v. Young (Tex.Civ. App.), 221 S.W. 660."

■ A part of the above statements, if not all of them, are false according to the undisputed evidence even if it be conceded that the defendant might not have known or believed them to be false. The defendant denied making the statements in issue but according to the findings of the jury defendant did make these statements as statements of facts and the undisputed testimony reveals and the court so found that plaintiffs would never have entered into the lease contract but for such representations. "The fact that the statement made was not intentionally false does not affect the right of the lessor to have the contract set aside if he was mislead by the statement." 36 Tex.Jur., Page 80, Section 13.

■ It was held in the case of Hart-Parr Co. v. Krizan & Maler, Tex.Civ. App., 212 S.W. 835, 837: "It is not necessary, in order to avoid a contract on the ground of fraud, that such fraud should have been the sole cause of making the same. It is sufficient if the fraudulent representation is relied upon to the extent that it was a material factor in inducing the making of the contract, and without which the same would not have been made." The holding in the case of Kennedy v. Texas Employers Ins. Ass'n, Tex. Civ.App., 121 S.W.2d 434, is to the same effect and was affirmed by the Commission of Appeals at 135 Tex. 486, 143 S.W.2d 583. This last cited opinion was adopted by the Supreme Court.

In the case of Boles v. Aldridge, 107 Tex. 209, 175 S.W. 1052, by the Supreme Court, it is stated:

"The positive representation as a fact of that which is untrue and concerning which a party has no knowledge is equivalent to an assertion that he knows it to be true, and, where material, is equally actionable with a statement known to be false. And where one man makes to another a certain definite and material statement concerning property, as was the testimony here, plainly for the purpose of influencing the other's action, and expressly vouches for its truth, the circumstance that he revealed his want of actual knowledge renders it none the less his own affirmative representation. It could not be otherwise, for such a statement loses its quality as mere related information when once

its reliability is positively affirmed and vouched for. It then takes on the full character of a definite representation, as it could be meant for nothing else, and comes within the rule to which we have adverted because it assumes to be truth. It is of no consequence that it is made without actual knowledge but upon information, and such disclosure is made at the time. That does not operate as a qualification in the face of the fact that the information is vouched for as in all respects reliable, and full responsibility for it announced. The positive affirmation of the truthfulness of information, upon which it is stated that a representation of fact is made, clearly amounts to an affirmation of the truthfulness of the representation itself. The inquiry in all such cases is not whether the party making the representation has actual knowledge, but whether the statement is made as one of fact and purports to be the truth."

■ Since the jury, upon sufficient evidence, found defendant made the four statements relied upon by the plaintiffs in setting aside the lease contract it is binding upon the trial court as well as this court. The jury also found that all of the representations were made as a statement of facts and as a material inducement to plaintiff to sign the lease. It is undisputed that the plaintiffs in past years had not been getting very much rent because of dry weather and this fact was discussed by the plaintiff, Crockett, and the defendant at the time they were discussing the making of the lease. Holman had rented the land for many years and plaintiffs were satisfied with her as a tenant. Holman had drilled an irrigation well near the plaintiffs' land and actually irrigated the same during the year the contract was negotiated by defendant.

The representation, if made, and the jury said it was, that if Holman kept the land it would be dry land farming was false. In view of plaintiffs' previous experiences where they had been getting only approximately $200 rent, defendant's representation that $2,500 was far more rent than the plaintiffs would receive for 1951 was a material inducement to plaintiffs to enter into the lease contract and especially if Holman did not want to rent the land. This is likewise true of the other representations. In the case of Ramsey v. Polk County, Tex.Civ.App., 256 S.W.2d 425-428, it is stated:

"This was not a mere statement of opinion but was given to the Commissioners' Court as a statement of fact. It is sometimes difficult to determine whether a given statement is one of opinion or one of fact but as a general rule distinction between fact and an opinion is broadly indicated by the statement that what was susceptible of exact knowledge when the statement was made is usually considered as a matter of fact and representations in regard to matters not susceptible of personal knowledge are generally to be regarded as mere expressions of opinion. See Russell v. Industrial Transportation Co., 113 Tex. 441, 251 S.W. 1034, 258 S.W. 462, 51 A.L.R. 1; 23 Amer.Juris. 784. An executory contract, such as this was at the time of the rescission, can be rescinded upon the ground of fraud and it is not necessary that the complainant show that he has suffered some monetary loss. He can show sufficient ground for rescission of an executory contract on the ground of fraud by a showing that by such fraud he was induced to part with some legal right or was induced to assume some legal liability, which he otherwise would not have done but for the fraudulent representations which induced the making of the contract. See Russell v. Industrial Transportation Co., supra, and cases there cited. The mere fact in this case that Polk County was induced to make a contract with the appellant by which it would have relinquished dominion over its lands in Throckmorton County, even though at a rental price of a few cents more per

acre than it had been receiving for the same lands, was a showing of an injury to the county."

■ We are of the opinion that under the findings of the jury and the undisputed evidence the court should have disregarded the jury's answers that the representations were not false and rendered judgment for the plaintiffs. Plaintiffs' points of error 1 to 4, both inclusive, are sustained. Since judgment should have been rendered for the plaintiffs upon the verdict of the jury and the undisputed evidence, plaintiffs' other points of error will not be discussed.

Judgment reversed and rendered.