**CHASE, INC., Appellant-Appellee,**

v.

**Raymond E. BOSTICK,**
**Appellee-Appellant.**

**No. 987.**

Court of Civil Appeals of Texas, Tyler.

April 28, 1977.

Rehearing Denied May 26, 1977.

Bert Creel, Tyler, for appellant.

James R. Lewis, Charles F. Potter, Potter, Guinn, Minton & Dickerson, Tyler, for appellee.

MOORE, Justice.

This is an appeal from a summary judgment. The plaintiff, Raymond E. Bostick (Bostick) brought suit against Chase, Inc. (Chase) and its president, Elbert Runnels, and its secretary, Gaylord T. Hughey, individually, seeking rescission and restitution under two contracts in which Chase contracted to convey him a ¹⁄₁₆th interest in an oil and gas lease on a 23.56-acre tract of land known as the "Smith Lease," and agreed to re-enter and rework a gas well (the Smith well) situated thereon. Bostick sought restitution in the amount of $10,-853.11 which he had paid as consideration pursuant to the contract for the lease and for his proportionate part of the expense in completing the well. Each contract called for the conveyance to Bostick of a ¹⁄₃₂nd interest in the well within ten days after the completion of the well as a commercial producer, provided that Bostick had paid his proportionate share of the drilling expense. Bostick alleged that (1) the contract was void under the Statute of Frauds, Tex.Bus. & Comm.Code, sec. 26.01(b)(4), because a description of the land from which Chase agreed to assign an interest was insufficient to identify or locate the land in question, and (2) that the contract was either the result of a mutual mistake as to the location of the land, or the result of a mistake on the part of Bostick and constructive fraud on the part of Chase. Chase answered by a general denial. Both parties filed motions for summary judgment accompanied by supporting affidavits and other evidence under the provisions of Rule 166-A, Texas Rules of Civil Procedure. After a hearing on the motions for summary judgment the trial court granted Bostick's motion and entered an order rescinding the contracts and ordering Chase to return the sum of $10,853.11 to Bostick. The court also entered a take-nothing judgment on Bostick's claim against Runnels and Hughey, individually. Further, the trial court denied Chase's motion for summary judgment relating to the Smith well.[1] Chase perfected an appeal from that part of the judgment awarding Bostick a summary judgment for restitution of the consideration paid for the re-entry of the Smith well.

In order to properly understand the controversy, a statement of the summary judgment proof is necessary. Chase was engaged in the business of re-entering and reworking oil and gas wells which had been previously drilled and abandoned. Prior to the time the parties entered into the contract in question, it was contemplated that Chase would probably re-enter and rework

---

1. Originally the appeal also involved a controversy with regard to the re-entry of the "Jones" well. The trial court granted Chase's motion for summary judgment with regard to the "Jones" well. Although Bostick perfected a limited appeal from this portion of the judgment, he subsequently abandoned his appeal in this regard.

several wells. Shortly before work was commenced on the first well Bostick agreed to participate. This well was known as the "Kangerga well." As a result of his contract with regard to that well, he was granted an option to participate in the re-entry and reworking of subsequent wells to the extent of an undivided ⅟₃₂nd interest. When Chase decided to re-enter the Smith well, the company notified Bostick by letter and enclosed a "supplemental" agreement supplementing their agreement made with regard to the re-entry of the Kangerga well. Under the terms of the supplemental agreement Chase was to re-enter and rework the Smith well. Bostick accepted the terms proposed by the supplemental agreement and agreed to pay $2,150 for an undivided ⅟₃₂nd interest covering drilling to the casing point and agreed to pay ⅟₂₄th of the completion cost. The supplemental agreement contained the following stipulation:

> "Chase, Inc. will make your assignment of said undivided ⅟₃₂ interest and execute and deliver the same within ten (10) days after completion of the above reference re-entry as a commercial producer, provided you shall have paid your proportionate share of expenses hereinafter set out as an additional sum required to cover the cost of completion."

The supplemental agreement recited that its purpose was to "set forth our agreement concerning the hereinafter described lease block in Rusk County, Texas, and the proposed reworking of the W. W. Smith Well . . . and the lease covering the drill site tract . . .." The agreement further recited that "Chase represents that it owns certain oil, gas and mineral leases covering approximately 23.56 acres as identified and described in Exhibit "A". The Exhibit referred to describes the lease as follows:

> "1. Oil and Gas mineral lease executed by W. W. Smith et ux, et al as lessors to Harry W. Bluhm, lessee, dated 12th June, 1954, and filed in the Deed Records of Rusk County, Texas, in Volume 530, pages 170–171. 23.56 acres more or less out of a 100 acre tract."

At that time the north 76 acres out of the 100-acre tract had already been committed to a producing oil and gas unit known as the "Anthony Unit." Nowhere in the agreement is the boundary line specified between the north 76 acres in the Anthony Unit and the south 23.56-acre tract.

At the time of the agreement both parties assumed that the Smith well was situated on the south 23.56-acre tract and were unaware that the well was situated on the north 76 acres in the Anthony Unit. It is undisputed that at the time Chase contracted to sell Bostick a ⅟₁₆th interest in 23.56-acre tract, Chase owned a large enough interest in the entire 100-acre tract so that it could have conveyed Bostick a ⅟₁₆th interest in 23.56 acres in and around the Smith well. While the parties understood the 23.-56-acre tract was located on the south end of the 100-acre Smith lease described in Exhibit "A" of the agreement, there was nothing in the agreement showing the metes and bounds description of the tract. Chase re-entered the well and thereafter completed it as a gas well producing at the rate of twelve million cubic feet per day. It is undisputed that Bostick paid Chase his full share of the drilling and completion costs in the amount of $10,853.11. Some time after the well was completed the tubing in the well separated, causing the lower part of the tubing to fall down in the well and partially block the flow of gas from the producing zone, and as a result production declined rapidly. It was then discovered that the Smith well was not, in fact, situated on the south 23.56-acre tract but rather was situated a short distance north of the southern boundary of the Anthony Unit and was within the Anthony Unit. Upon discovering the mistake as to location of the well, Chase immediately undertook to take the well out of the Anthony Unit. Chase employed a surveyor and caused a survey to be made in which the southern boundary of the Anthony Unit was moved northward so that the Smith well would then be on the 23.56-acre tract. In so doing, a small amount of land around the well was surveyed out of the Anthony Unit and exchanged for a similar amount of land taken

from the 23.56-acre tract. A "Clarification of Unit Boundaries" agreement was then circulated among the owners of the Anthony Unit for signature. According to the deposition testimony of Mr. Hughey, Chase's secretary, most of the owners of the Anthony Unit signed the agreement. He testified, however, that a few of the small royalty owners had never signed the agreement mainly because he had not contacted them. Bostick was not consulted about the change in the boundary line and did not sign the agreement because Chase did not deem his signature necessary since he owned no interest in the Anthony Unit.

It is undisputed that the re-entry was made; that the well was completed; and that Bostick had paid all the consideration for the same. Chase so admits in its brief. It is likewise undisputed that Bostick has never received an assignment of his ⅟₁₆th interest. In this connection the record shows that when Bostick learned that the well was not situated on the 23.56-acre tract, he became alarmed. Upon contacting Chase in September 1972 he was told that certain curative work on the title was being done and as soon as such work was completed he would receive his assignment. Shortly thereafter he employed an attorney who filed suit for rescission and restitution on January 23, 1973.

By a single point of error appellee Chase contends that the trial court erred in rendering a summary judgment in favor of Bostick with regard to the W. W. Smith lease. Bostick maintains that the summary judgment may be sustained on the theory that the contract was voidable because of a mutual mistake of fact. We sustain Bostick's contention.

What was said in *Mason v. Peterson*, 250 S.W. 143 (Tex.Com.App.1923, jdmt. adopted), would seem to apply with equal force to facts here. In that case the court said:

> "It is held by a long and unbroken line of decisions in this state that a false representation by the vendor regarding the quantity of land sold or the quantity of a particular character, made to the vendee as an inducement to purchase, which actually deceives the vendee and is relied upon by him, constitutes fraud which will entitle the vendee to relief in equity. It is not essential to the granting of relief that the vendor act dishonestly in making the misrepresentations. If the misrepresentations are made as facts, and not as mere expressions of opinion, and are calculated to and do operate as an inducement to the vendee to enter into the contract, the consequences to him are the same whether the representations were innocently or fraudulently made; and for this reason fraudulent intent is held not to be a necessary element to granting the relief. Knowledge upon the part of the vendee of the falsity of his representations and his fraudulent intent in making them may aggravate the wrong, and might give rise to exemplary damages; but absence of such knowledge and intent cannot relieve him of the consequences of a false representation made by him as an existing fact and calculated to operate and actually operating as an inducement to the contract. Misrepresentations so made will be deemed fraudulent in law; hence the doctrine of constructive or legal fraud as distinguished from a malicious or fraudulent intent in fact. This doctrine is now settled by the following, among other decisions of our Supreme Court: *Mitchell v. Zimmerman*, 4 Tex. 75, 51 Am.Dec. 717; *Smith v. Fly*, 24 Tex. 345, 76 Am.Dec. 109; *O'Connell v. Duke*, 29 Tex. 300, 94 Am.Dec. 282; *Loper v. Robinson*, 54 Tex. 510; *Culbertson v. Blanchard*, 79 Tex. 486, 15 S.W. 700.

> "And, even where there is no element in the transaction sufficient to warrant a finding of legal or constructive fraud, and the misrepresentation is the result of an honest mistake on the part of the seller, the mistake being shared in by the buyer, relief is granted upon the doctrine of mutual mistake, and the same remedies apply as in the case of actual or constructive fraud. *Culbertson v. Blanchard*, above; *Cox v. Barton* (Tex. Com.App.) 212 S.W. 652; *Taylor v. Hill* (Tex.Com.App.) 221 S.W. 267.

. . . . .

"Where fraud or mutual mistake enters into a contract of this character, the buyer has an election of inconsistent remedies. He may, if he acts promptly after discovering the fraud or mistake, or within a reasonable time after he should, by the exercise of proper diligence, have discovered it, rescind the contract and recover back the consideration if he has paid it, or, if he has not paid it, he may cancel his obligations under the contract."

While admitting in its brief that the agreement in question was based on a mutual mistake of fact, Chase argues that Bostick is not entitled to restitution because the mistake was not material. In this connection Chase argues that the mistake was not material because the parties did not contract with regard to a specific 23.56-acre tract around the Smith well since the tract was not described by metes and bounds. Chase says that what the parties agreed upon was for the assignment of ⅟₁₆th interest in an unspecified 23.56 acres containing the Smith well. Based on this premise Chase argues that since it owned more than a ⅟₁₆th interest in the entire 100-acre lease and subsequently had a survey made defining 23.56 acres around the well taking the same out of the Anthony Unit, and then tendered and continued to tender Bostick an assignment of his ⅟₁₆th interest, Chase fulfilled its contract and therefore the mistake was not material. In other words, Chase takes the position that even though there was a mutual mistake, the contract was nevertheless fulfilled in accordance with the original agreement and Bostick cannot now avoid the agreement by refusing to accept the assignment. As we view the record, Chase's position is untenable because it fails to find support in the summary judgment proof. While Chase alleges in its answer and contends in its brief that it has tendered and continues to tender an assignment of the ⅟₁₆th interest, the summary judgment proof refutes such contention. In the affidavit testimony of Chase's secretary, Gaylord T. Hughey, dated April 18, 1975, he testified as follows:

"Assignments were prepared covering each of these interests, but I would not give his to Raymond Bostick until he paid the balance of his share of completion costs of the Smith well. These completion costs included remedial work required when the tubing failed in the well causing water from the Rodessa formation to block production from the lower petit formation, which was the productive zone. These remedial efforts were halted when Raymond Bostick brought this suit."

■ We fail to find anything in the agreement requiring Bostick to pay for remedial work on the well once the well had been completed and Chase does not so contend. Chase admits in its brief that Bostick had "paid all the consideration called for by the contract" and admits that he had "performed" his part of the contract. While Chase alleges a tender of an assignment in its pleading, the proof shows that Chase had, in fact, refused to deliver the assignment for ulterior reasons foreign to the agreement. In any event the mere allegation of a tender of an assignment of an interest in land does not amount to a legal tender in the absence of any evidence showing that the instrument itself was tendered. *Lefferts v. Dolton,* 217 Pa. 299, 66 A. 527 (1907); 92 C.J.S Vendor & Purchaser § 230 p. 102.

Moreover Chase admits that not all of the owners of the Anthony Unit have signed the "clarification" agreement by which the Smith well was to be taken out of the Anthony Unit. As we understand the situation, this means that the well remains within the Anthony Unit thereby rendering it impossible for Chase to convey a merchantable title to the well.

■ We recognize the rule that in order for a party to rescind a contract on the ground of a mutual mistake of fact, the mistake must deal with a material part of the contract itself. See 13 Tex.Jur.2d Contracts sec. 255, p. 477. Obviously, the mutual mistake of fact was of sufficient gravity to be classified as material. The mistake has led to a situation where Chase cannot or will not deliver the assignment in accordance with its agreement. Not having re-

ceived that for which he bargained because of a mutual mistake of material fact, Bostick was entitled to rescind the contract.

The well established rule is that a summary judgment should be granted only if the summary judgment record establishes a right thereto as a matter of law. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827 (Tex. 1970); *Prestegord v. Glenn*, 441 S.W.2d 185 (Tex.1969); Rule 166–A(c), Tex.R.Civ.P. The ultimate question is whether the summary judgment proof establishes that there is no genuine issue as to any material fact. Rule 166–A(c), supra. Where, as here, the motion for summary judgment is supported by affidavits or other extrinsic evidence sufficient on its face to establish facts which, if proven at the trial, would enable the movant to an instructed verdict, the opponent must show opposing evidentiary evidence which will raise an issue as to a material fact. 4 McDonald, Texas Civil Practice, sec. 17.26.8(iv) p. 156 (1971 ed.). The summary judgment proof establishes a cause of action for rescission and restitution based upon a mutual mistake of material fact. As we view the record, there is nothing in the summary judgment proof raising a disputed issue of material fact. It therefore follows that the appellee was entitled to a summary judgment as a matter of law.

The judgment of the trial court is affirmed.