R. W. CALLOWAY, Plaintiff-Appellant,

v.

Tommy MANION, Defendant-Appellee.

No. 76–3047.

United States Court of Appeals,
Fifth Circuit.

May 8, 1978.

Before THORNBERRY, AINSWORTH and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

This diversity suit concerns a horse trade gone lame. Plaintiff-appellant Calloway traded Red Rose Ray, a gelding, to defendant-appellee Manion in exchange for Our Candy Barett, a mare. At the time of the trade, Manion, a professional horse dealer, pointed out some degree of swelling around Our Candy Barett's hock.[1] Calloway testified that Manion stated the swelling was "not a problem". After the exchange, the swelling did not improve and Calloway discovered that Our Candy Barett had an incipient ovary condition that caused her to kick repeatedly and to injure her hock. Alleging that Our Candy Barett was unfit, Calloway sued Manion, seeking recision and monetary damages, on three theories— breach of express warranty, breach of implied warranty and misrepresentation.

The jurors before whom the case was tried found all the necessary elements of a breach of express warranty, but they additionally found that Calloway had contractually limited his remedy to a new trade for a higher priced horse. They found all the elements for breach of implied warranty, but accepted Manion's defenses to that action.[2] The district court, relying on these jury findings, ruled that Calloway could not recover for breach of express warranty because he had not pursued his agreed-to sole remedy[3] nor had he urged that the remedy

John H. McElhaney, Dallas, Tex., for plaintiff-appellant.

Tom Thomas, James W. Massie, III, James W. Lee, III, Dallas, Tex., Felson Bowman, Indianapolis, Ind., for defendant-appellee.

1. A horse's hock is analogous to a human's ankle but in a horse that part of the leg is bent backward and extends upward.

2. Tex.Bus. & Comm.Code § 2.314 provides that unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Goods to be merchantable must be at least such as pass without objection in the trade under the contract description; and . . . are fit for the ordinary purposes for which such goods are used. Under Tex.Bus. & Comm.Code § 2.104 a merchant is a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill. Manion, a horse dealer, is a merchant with respect to horses, and therefore subject to the implied warranties set out above. As will be noted later, Manion apparently demanded that Calloway inspect the horse and was refused. That refusal was sufficient to bar recovery for any defect which an examination ought to have revealed. Tex.Bus. & Comm. Code § 2.316(c)(2). The jury found that the inspection would have revealed the presence of the incipient ovary.

3. Tex.Bus. & Comm.Code §§ 2.316, 2.719(a)(2).

had failed of its essential purpose.[4] The district court also ruled that the jury findings on implied warranty and the defenses thereto effectively cancelled each other. Turning to the third theory of recovery, the district court held that pre-Code Texas case law, which permitted an action for innocent misrepresentation, had been altered by the Code's passage and that the limitation of remedy provision of Tex.Bus. & Comm.Code § 1.103 applied to innocent misrepresentation as illustrated in the case before it. Judgment was rendered for defendant Manion and plaintiff Calloway brought this appeal.

On appeal Calloway argues that the sections of the Tex.Bus. & Comm.Code which authorize contractual restrictions of remedies,[5] do not preclude a remedy of recision based on misrepresentation, that Tex.Bus. & Comm.Code §§ 1.103 and 2.721 expressly preserve that remedy, and that there was no evidence that the purported contractual restriction of remedies was either express or agreed to be the sole remedy. Defendant Manion counters that there were no misrepresentations, that Calloway is barred from recovery by his refusal to conduct a veterinarian examination, and that Calloway was not entitled to equitable relief since the horse he traded, Red Rose Ray, had its own defects.

▮▮ The parties agreed that their transaction was controlled by the Uniform Commercial Code as enacted in Texas, Tex. Bus. & Comm.Code, Art. 2. We first address two preliminary questions in that regard. The exchange of the animals took place in Springfield, Illinois. Plaintiff Calloway then trailered Our Candy Barett back to his home state of Texas. Apparently defendant Manion, a citizen of Illinois, remained with his horse in that state. When sitting in its diversity jurisdiction, this court is bound to apply the law of the state in which it sits, including the choice of law rules of that state. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon v. Stentor Elec-*

*tric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Tex.Bus. & Comm.Code § 1.105 states that:

(a) Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this title applies to transactions bearing an appropriate relation to this state.

We think that generally this section of the Code refers to pre-dispute agreements. Nevertheless, we see no reason to question the parties' stipulation. The statutory comments to Section 1.105 note that the only restrictions on the parties' choice of law are the limits of Section 1.105(b), not here applicable, and the rule that a chosen state must bear a reasonable relation to the transaction. *See Three-Seventy Leasing Corp. v. Ampex Corp.*, 528 F.2d 993, 997 and n.5 (5 Cir. 1976). A second question is whether this transaction is a sale. Prior to the enactment of the Tex.Bus. & Comm. Code Texas courts distinguished between an exchange of property and a sale. *Griswold v. Tucker*, 216 S.W.2d 276 (Tex.Civ.App.—Ft. Worth 1949, no writ) (transfer of properties without an agreed value is an exchange; transfer at agreed or market value is a sale). Tex.Bus. & Comm.Code § 2.106 defines a sale as the passing of title from seller to buyer for a price. Section 2.304 tells us that a price may be payable in goods or otherwise. We need not reach the issue whether Section 2.304 should be interpreted to retain the pre-Code distinction because the record indicates that the horses were traded at agreed values. (Record at 44).

▮▮ Appellant Calloway sought, in the trial court, to recover for breach of an express warranty. As a general rule in a sale of goods there is an express warranty that the goods conform to an affirmation of

---

**4.** Tex.Bus. & Comm.Code § 2.719(b).

**5.** Tex.Bus. & Comm.Code §§ 2.316, 2.718, 2.719.

fact, promise or a description of the goods made by the seller to the buyer if the affirmation or description is part of the basis of the bargain. *General Supply & Equipment Co., Inc. v. Phillips*, 490 S.W.2d 913 (Tex.Civ.App.—Tyler 1972, writ ref'd n. r. e.).[6] *See* Weintraub, Disclaimer of Warranties and Limitation of Damages for Breach of Warranty Under the UCC, 53 Texas L.Rev. 60 (1974). The jury found in response to special issue number one that Manion informed Calloway that Our Candy Barett was suitable for use as a show horse.[7] Although defendant Manion objected to the submission of that special issue in the trial court the record contains no alternative requested by him and he made no objection to the issue on appeal. We must, therefore, assume, as the trial court did, that all elements of express warranty were established.

That assumption alone will not permit recovery. The jury's answer to special issue number fourteen found that Manion and Calloway had agreed that in the event that Our Candy Barett was not suitable, Calloway's sole remedy would be to return the horse in exchange for ten thousand dollars credit on another, higher-priced horse. Tex.Bus. & Comm.Code § 2.719 provides:

(a) Subject to the provisions of Subsections (b) and (c) of this section and of the preceding section on liquidation and limitation of damages,

(1) the agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyers' remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

(2) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

**6.** The court in *General Supply & Equipment*, citing Tex.Bus. & Comm.Code § 2.313, also held that the injured party must show his reliance on the representations and that the failure to comply with the representations was the proximate cause of his injury. 490 S.W.2d at 917. Some commentators have argued persuasively that reliance is not a requirement for proof of an express warranty. *Weintraub, supra* at 63. Other Texas Courts of Civil Appeals have held that buyer reliance is unnecessary to support an express warranty cause of action. *Walter E. Heller & Co. v. Da-Jor Construction Co.*, 460 S.W.2d 266 (Tex.Civ.App.—Beaumont, no writ); *Elanco Products Co. v. Akin-Tunnell*, 474 S.W.2d 789 (Tex.Civ.App.—Amarillo 1971, rev'd on other grounds, 516 S.W.2d 726 (1974)). We, of course, are in no position to resolve this issue of state law. The record reveals that plaintiff-appellant Calloway sought an issue on reliance as a "precautionary measure". Plaintiff's requested issue number 3 would have asked whether Calloway relied in whole or in part on Manion's statement that Our Candy Barett was either sound or fit for the purpose of use by Tricia Calloway in shows. The trial court gave an instruction, number eight, which asked only whether plaintiff had relied on defendant's skill and judgment to furnish a horse that was suitable for use as a show horse by Tricia Calloway. That issue seems to be derived from Tex.Bus. & Comm.Code § 2.315 on warranty of fitness for a particular purpose rather than from any Code section on express warranty. Defendant has raised no point of error relating to the issues submitted by the trial court and any error is thus waived. If reliance were required there was an unobjected-to jury finding to support it. The court in *General Supply & Equipment* also suggested that a plaintiff would have to show injury proximately caused by the breach of warranty. That rule applies only in a case in which a buyer seeks consequential damages under Tex.Bus. & Comm.Code § 2.715. *Lanphier Co. v. Fowco Const. Co.*, 523 S.W.2d 29, 42 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.) (proximate cause rule applies when the measure of damages for breach of warranty under Section 2.714 is not applicable because of special circumstances showing proximate damages of a different amount, including those available under Section 2.715).

**7.** We assume that this issue was related to the establishment of an express warranty. The better practice would have been to track the statutory language of Tex.Bus. & Comm.Code § 2.313. As previously stated, that section requires that a seller make an affirmation of fact or promise that related to the goods and became part of the basis of the bargain. The issue as submitted does not address those questions.

As the section comments point out, Subsection (a)(2) creates a presumption that clauses prescribing remedies are cumulative rather than exclusive. If the parties intend the term to describe the sole remedy under the contract, this must be clearly expressed. Tex.Bus. & Comm.Code § 2.719, Comment 2.

The jury's finding was based on testimony by the defendant Manion:

Q: Now, at the time that you made your trade with Mr. Calloway, was there any conversation about Mr. Calloway being able to trade Our Candy Barett back in for any credit at any time in the future?

A: Yes, sir, there was.

Q: What was the substance of that agreement as you recall it?

A: We got back to the barn. His daughter had ridden both horses, we discussed them. We walked back to the barn, the mare was being unsaddled and her blanket was being placed on her and she was being put back in the stall.

Mr. Calloway said, "Tommy, this horse really doesn't suit me. If a better horse comes along would you take this mare back in on trade?

I said, "yes", I would.

He said, "At the $10,000 figure?"—which is what I had priced the mare at on the phone, and I said, "Yes, I would."

The question of whether a jury finding may be set aside for insufficient evidence is one of federal rather than state law. *Har-Pen Truck Lines, Inc. v. Mills*, 378 F.2d 705 (5 Cir. 1967); *Shirey v. Louisville & Nashville R. Co.*, 327 F.2d 549, 552 (5 Cir. 1964). In reviewing the sufficiency of evidence to support a jury finding, the Court of Appeals must view that evidence in the light most favorable to the party prevailing below. *Jig the Third Corp. v. Puritan Marine*

*Ins. Underwriters Corp.*, 519 F.2d 171 (5 Cir.), *cert. denied sub nom. Atlantic Marine Inc. v. Jig the Third Corp.*, 424 U.S. 954, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976). This review requires that a court indulge in all permissible inferences for a prevailing party. *Pletz v. Christian Herald Ass'n Inc.*, 486 F.2d 94 (5 Cir. 1973), and a jury finding is not to be lightly overturned. *Pugh v. S. C. Hutchinson Co., Inc.*, 565 F.2d 375 (5 Cir. 1978).

We cannot say that it was impermissible for the jury to infer that, in the context of an oral agreement between two persons knowledgeable in the field,[8] this was not a sufficiently express limitation of remedy. Although a seller attempting to limit his buyer's remedies should do so in the most specific terms possible, we are unwilling to enforce the standards that we might apply to a written contract in this case. Limitation of liability to repair and replacement of defective parts is not uncommon. *Fredonia Broadcasting Corp., Inc. v. RCA Corp.*, 481 F.2d 781 (5 Cir. 1973); *Ganda, Inc. v. All Plastics Molding, Inc.*, 521 S.W.2d 940 (Tex. Civ.App.—Waco 1975, writ ref'd n. r. e.); *Lankford v. Rogers Ford Sales*, 478 S.W.2d 248 (Tex.Civ.App.—El Paso 1972, writ ref'd n. r. e.). The remedy agreed upon by Calloway and Manion in this case is analogous.

Calloway also plead a cause of action for misrepresentation. He claimed that under his misrepresentation action he was entitled to recision of the agreement and return of his horse, Red Rose Ray. The district court denied Calloway's misrepresentation claim because it found neither actual nor negligent fraud. The district court viewed any possible misrepresentation action as capable of limitation through the same avenues necessary to limit remedies for breach of warranty.[9] Tex.Bus. & Comm.Code § 2.721 states that all of the Article Two remedies are available to a

---

8. The record contains ample evidence that Calloway and his family were more than casual adventurers into the horse world. Calloway was Treasurer and a board member of the Trinity Quarter Horse Breeder's Association. Mrs. Calloway is the editor of the Trinity Quarter Horse. Both of their daughters regularly show quarter horses.

9. Tex.Bus. & Comm.Code §§ 2.316, 2.718, 2.719.

defrauded party to a sales transaction. It continues, "Neither recision nor a claim for recision of the contract . . . shall bar or be deemed inconsistent with a claim for damages or other remedy." Most authorities recognize that the authors contemplated a cause of action for fraud in which the buyer would have the right to return the goods purchased and get his money back, but that the contemplated right existed outside of the Code. J. White and R. Summers, Uniform Commercial Code § 8–2, n.9. That theory is supported by the Code's restriction of the recision concept. The Code replaces the recision remedy with the concepts of rejection and revocation of acceptance. Tex.Bus. & Comm.Code § 2.608, Comment 1. Section 2.721 merely recognizes that the change in Article Two remedies does not affect a buyer's right to pursue non-code remedies. The Code's enactment has not interfered with Calloway's misrepresentation action which is essentially a tort claim. Texas pursues the equitable rule that whether misrepresentation is intentionally or innocently made, as far as the effect is concerned it is the same, and equally avoids the contract. *Chase, Inc. v. Bostick*, 551 S.W.2d 116 (Tex.Civ.App.—Tyler 1977, writ ref'd n. r. e.); *Miller v. Latham*, 276 S.W.2d 858 (Tex.Civ.App.—Amarillo 1954, writ ref'd n. r. e.); *Passero v. Loew's*, 259 S.W.2d 909 (Tex.Civ.App.—El Paso 1953, writ ref'd n. r. e.); *Martin v. Iroquois Mfg. Co.*, 207 S.W. 569 (Tex.Civ.App.—Dallas 1919, no writ). Under that theory, Calloway sought to return Our Candy Barett and recover the value of Red Rose Ray or $9,500.

Any remedy involving recision is subject to equitable rules. W. Prosser, Law of Torts, § 95 (4 ed. 1971). Red Rose Ray has been sold to a third party. Calloway has bred Our Candy Barett, who is now in foal. Although we have stated that Calloway's misrepresentation claim is not controlled by the Uniform Commercial Code as enacted in Texas, we are not barred from reference to the Code by analogy in determining the balance of the equities in this situation.[10]

Calloway's use of Our Candy Barett would bar him from the Code remedy of rejection and limit him to a damage remedy. *Explorer's Motor Home Corp. v. Aldridge*, 541 S.W.2d 851 (Tex.Civ.App.—Beaumont 1976, writ ref'd n. r. e.). We think that his exercise of dominion and control over Our Candy Barett should prevent recision in this case also. The careful trial judge presented damage issues to the jury so that we are able to avoid the necessity or expense of a new trial. The jury found that the difference in value of the two horses at the time of trade was $1,500.00. We hold that Calloway may recover that sum as damage.

We reverse the district court judgment in favor of defendant-appellee Manion with regard to the misrepresentation action and order that plaintiff-appellant Calloway recover $1,500.00. We hold that he is not entitled to recover on any other theory and affirm the district court's decision on the warranty claims.

AFFIRMED IN PART, REVERSED IN PART AND RENDERED.

---

10. The district court was concerned that Calloway's misrepresentation would allow him to circumvent the Code. For that reason we think this analogy especially appropriate.